# CHARLESTON.

## HAGER *v.* MELTON, SHERIFF.

Submitted June 9, 1909.    Decided October 26, 1909.

1. APPEAL AND ERROR—*Determination and Disposition of Cause—Remanded.*

   A decree, denying relief on a cross-bill, or answer in the nature thereof, the averments of which are sufficient, but are not sustained by evidence taken in proper form, but the existence of which is disclosed by affidavits, which the trial court erroneously permitted to be filed as evidence, on the hearing, over objections, will be reversed and the cause remanded, to allow such evidence to be taken and filed in regular and proper form, if the appellate court can see the party would be entitled to the relief asked for in such answer when the evidence shall have been so taken. (p. 69.)

2. EQUITY—*Pleading—Special Replication.*

   Facts set up in an answer, praying affirmative relief, which are merely defensive to an allegation of the bill, do not constitute new matter, within the meaning of the statute, requir-

ing a special replication to an answer, and are sufficiently denied by a general replication. (p. 71.)

3. STATUTES—*Conditions Precedent.*

If a statute provide that an act done shall not become effective, unless and until certain other acts shall have been done, the additional things required are conditions precedent and must be performed before the principal act can have any force or effect. (p. 66.)

4. MUNICIPAL CORPORATIONS—*Ordinances—Publication and Record —Necessity.*

A provision of a city charter, saying an ordinance, after passage, shall not go into effect, unless and until it shall have been published in a newspaper and, together with an affidavit to the fact of publication, recorded in a certain book, must be complied with before the ordinance can have any virtue or efficacy. (p. 66.)

5. RECORDS—*Construction of Statute.*

A statute requiring certain papers to be spread upon a named book is to be read as if it had said such papers should be recorded in such book. (p. 67.)

6. SAME—*Recording Written Instruments—Sufficiency.*

As to what acts are sufficient to effect a recordation, the statute, requiring it, is to be interpreted in the light of its subject matter, and, in respect to the form of the record and the instrumentalities by which it is effected, more latitude is allowed when the legislative design is to provide a record to subserve temporary purposes, than when the record is intended to operate throughout a long period of time. (p. 68.)

7. MUNICIPAL CORPORATIONS—*Ordinances—Recording—Sufficiency.*

Under a city charter requiring ordinances, imposing assessments, fines and penalties, other than ordinary annual levies, and other papers relating thereto, to be recorded in a certain book, it suffices to paste printed copies thereof on the leaves of the book, it appearing that enforcement of the liens and collection of the penalties within comparatively short periods of time after the passage of such ordinances are contemplated. *Magers* v. *Edwards.* 13 W. Va. 822; *Atkinson* v. *Sutton,* 23 W. Va. 197. (p. 68.)

8. SAME—*Public Work—Bids—"Lowest."*

A single bid for public work, made under due advertisement for such bids, pursuant to an ordinance requiring such method of letting contracts, authorizes a city council to contract with the bidder. The term "lowest," used in such connection, is to be taken in its logical and practical, rather than its grammatical sense. (p. 72.)

9. SAME—*Street Improvements—Cost of Paving Street Intersections.*

Under a city charter, imposing special assessments for street improvements and providing that two-thirds of the total cost of grading and paving any street or portion thereof shall be severally charged to the owners of land abutting thereon in such proportion as the frontage in feet of each owner's land, so abutting, bears to the total frontage of all land so abutting, authorizes inclusion and apportionment, in the estimate, of the cost of paving street intersections or crossings. (p. 73.)

10. SAME—*Street Improvement—Abatement from Liability.*

If, under a city charter, silent as to charges against street railway companies for the cost of paving between the rails of the track and along the sides thereof, the council, by ordinance, impose such a charge, an abutting property owner is not entitled to the benefit of any portion thereof by abatement from the amount with which he is chargeable by the terms of the charter. (p. 75.)

11. SAME—*Special Assessments—Penalties—Lien.*

A provision in a city charter saying special assessments, with penalties, therein imposed, added, shall be treated and considered, and payment thereof enforced in all respects as provided in the charter for the collection of taxes due the city, and that there "shall be a lien therefor, the same as for such other taxes, which lien may be enforced the same as provided for other taxes," gives a lien for the penalties as well as for the assessments, enforcible by any means provided for the enforcement of the latter. (p. 76.)

12. SAME—*Special Assessments—Adjacent Lots of Same Owner.*

A charter provision, authorizing special assessments against property, without requiring the assessments to be made against separate lots, leaves it in the discretion of the council as to whether adjacent lots, fronting on the same street, and owned by the same person, shall be charged separately, each according to its own frontage, or all, according to their total frontage, as a single tract, and an assessment against all is valid. (p. 76.)

13. TAXATION—*Sale for Taxes—Irregularities.*

Sale of property, as delinquent for non-payment of a valid tax, cannot be enjoined for mere irregularities in the return of delinquency or notice of sale. (p. 76.)

14. MUNICIPAL CORPORATIONS—*Special Assessments—Suit to Enjoin Sale—Affirmative Relief to City.*

In a suit brought to enjoin the sale of property as delinquent for non-payment of city taxes, on the ground of invalidity of the tax, the city, if authorized by its charter to enforce its lien for the taxes by suit in equity, and the tax is valid, may

have a decree for the enforcement of the lien, as upon a cross-bill, by praying such relief in its answer.   (p. 77.)

Appeal from Circuit Court, Kanawha County.

Suit by Nancy Hager against J. J. Melton, Sheriff, the City of Charleston, and others.   Decree for plaintiff, and the city appeals.

*Reversed and Remanded.*

*Upshur Higginbotham, W. S. Laidley,* and *Alexander & Mc-Cabe,* for appellant.

*J. W. Kennedy* and *Morgan Owen,* for appellee.

POFFENBARGER, JUDGE:

The City of Charleston complains of a decree of the circuit court of Kanawha county, perpetually enjoining the sheriff of said county from selling certain lots, owned by Nancy J. Hager, to enforce the city's lien thereon for street paving.   The property was certified to the Auditor of the State, as delinquent for non-payment of these assessments, and he certified it to the sheriff of the county for sale as if delinquent for non-payment of ordinary taxes.   The sale was enjoined, not merely for irregularity in the sale proceeding, such as defective notice or the like, but also for lack of right and power in the city to sell the property.   The decree declares the assessment invalid, illegal and void, cancels and sets it aside as constituting a cloud on the plaintiff's title, and orders the recordation of a copy of the decree in the clerk's office of the county court, to operate as a complete discharge and release of the alleged assessment and lien.

The alleged grounds of invalidity in the lien and sale proceedings are, (1) that the ordinance under which the paving was done never became operative or took effect, because it was not published and the evidence of the publication thereof recorded in the manner prescribed by the charter; (2) the contract for the work was not let to the lowest bidder; (3) the assessment was made against three lots as a whole and not against the lots separately, on an apportionment made; (4) the assessment includes apportionment to the plaintiff of the cost of paving street crossings, not authorized by the law; (5) no al-

lowance is made for a portion of the cost of paving paid by the street railway company; (6) property cannot be sold for non-payment of special assessments, unless certified for sale for other taxes at the same time; (7) the return of delinquency is defective, the affidavit appended to the list being insufficient; (8) the notice of sale is misleading and insufficient.

Section 20 of the charter of the city, passed in 1895, as amended by chapter 36 of the Acts of 1899, provides "that no order, or ordinance imposing, or providing for the imposition of, any assessment, fine or penalty, other than the ordinary annual levy of city taxes, shall * * * go into effect unless and until it shall have been published once a week, for two successive weeks, in some newspaper of general circulation in, and published in, said city, nor unless, and until, the affidavit of the publisher of said paper to such publication be returned to, and spread upon the journal of, the council." The inhibitory terms of this statute, saying no such ordinance shall go into effect unless, nor until, published and the affidavit of the publisher returned to and spread upon the journal, make these requirements clearly mandatory. 21 A. & E. Eng. Enc. Law 969. If the terms were not prohibitory, it would be, according to almost uniform authority, only directory, *Id.;* but, as the legislature has seen fit to use terms generally regarded by the courts as importing intention not to give effect or virtue to an act done in a manner different from that prescribed, we must respect the great weight of judicial opinion and the expression of legislative will as it is interpreted thereby. It is urged that this section was impliedly repealed by the amendment and re-enactment of section 28 of the city charter by chapter 152 of the Acts of 1901, since said section 28, as so amended, grants powers and prescribes regulations, concerning the permanent paving of streets, and gives remedies for the collection of the cost thereof, and does not require such publication and recordation of the evidence thereof. This position is untenable. Chapter 152 of the Acts of 1901 makes no direct reference to said section 20 of the charter. That section relates to the passage of ordinances, imposing special assessments and penalties generally, not merely to those applicable to street improvements. Section 28, as amended, makes no provision on that subject. It confers certain powers, without saying how the city shall express its

will or volition in exercising them and preserve the evidence thereof. Said section does not purport to be a comprehensive provision, covering all that pertains in any way to street improvements, including the acquisition of jurisdiction, cost, assessment and collection, so as to make it exclusive of all other provisions, relating thereto. The rule invoked is clearly not applicable. The section must be read as part of the chapter. It repeals nothing to which it is not irreconcilably repugnant, and no difficulty whatever is found in allowing section 20 to have full operation and effect consistently with the terms of section 28.

Whether the ordinance providing for the paving of Virginia Avenue, from Charleston Street to Virginia Street, the portion thereof on which the property in question abuts, was published as the charter requires, and the affidavit of the publication thereof spread upon the journal, must be determined, in part, by oral testimony, as to the facts and circumstances tending to show that the ordinance was published, and an affidavit thereof made and spread upon the journal. That such evidence exists is disclosed by this record in affidavits, exhibited with the answer and formally filed on the hearing, over the objection of the plaintiff. The objection to the filing thereof ought to have been sustained. *Herold* v. *Craig,* 59 W. Va. 353. These affidavits cannot be admitted to prove the averments of the answer, and the facts stated in them cannot be considered without competent evidence thereof. However, as the affidavits are in the record, the record discloses the probable, almost certain, existence of the evidence stated in them, and the power of the defendant to procure and put it into the record in proper form. The facts which this evidence would disclose are: The ordinance was published in the Charleston Daily Mail on the 24th day of July, 1902, and on the first day of August, 1902. It was the custom of the publisher of that paper to make affidavit to all city publications and deliver them to the recorder or some other officer. It was also the custom of the recorder not to actually transcribe the ordinance and affidavit into the journal, but to paste them therein. While the journal does not contain the affidavit of the publication of the ordinance in question, so pasted therein, it does contain other similar affidavits. It also bears evidence of the loss or abstraction of papers that had been pasted in it. The publication as to Virginia Avenue was near the same time as the

publication of the ordinance for the paving of Bigley Avenue, and the affidavit of the publication of said last named ordinance is pasted in the journal. There is no evidence that any other kind of papers were pasted in it. If the evidence of these facts and circumstances were in the record in competent form, it would naturally suggest to the mind that the affidavit in question was one of the papers pasted in the journal and subsequently lost, and we think it would suffice to prove such recordation and also that this would be a sufficient spreading of the same on the journal within the meaning of the statute, which says the ordinance and affidavit shall be "spread" on the record. The statute does not say it shall be transcribed or recorded, but it obviously means recorded. Whether actual transcription is necessary to effect a recordation depends, in our judgment, upon the character of the record. There is a manifest difference between a record intended to subserve purposes or perform functions throughout a long period of time, such as that of a deed, judgment, decree or statute, and one intended only to subserve a mere temporary purpose. In the former case, there is reason for requiring the record to be made in durable form, and, hence, there may be a presumption of legislative intent to require it. Accordingly it was held in *Caldwell* v. *Center,* 30 Cal. 539, that the pasting of a map between the leaves of a record book was not sufficient, though that practice obtains very extensively in this State and seems never to have been questioned. On the same theory, a transcription made with a pencil was held insufficient in the case just mentioned. But, if these decisions be regarded as sound, the reasoning upon which they are based fails in the case of a record made for temporary purposes. Here, the object is to put in force an ordinance for an improvement, intended to be made and the cost thereof collected in a short period of time. After that has been accomplished, it performs no useful purpose. However it may be under other statutes, we think the pasting of the ordinance and affidavit in the journal is a substantial and sufficient compliance with the requirement of the charter. That it is competent to show that a paper has been recorded and then lost, or the record destroyed, we have not the slightest doubt. Its mere absence from the book, or the absence of the book itself, is not conclusive evidence of non-recordation. Persons injured by the destruction of

records could have relief at common law, and the statutes passed for that purpose are cumulative. *Smith* v. *Carter,* 3 Rand. 167; *Lyons* v. *Gregory,* 3 H. & M. 237. In the absence of a statutory provision, parol evidence is admissible to prove the publication of an ordinance. 21 A. & E. Enc. Law 974.

Ordinarily, a failure on the part of a party to a suit to take and introduce his evidence before the cause is submitted, precludes him from having relief. Generally, in such cases, the appellate court refuses to disturb the decree, if it is against him, and, on reversing it, if it is for him, refuses to remand the cause and renders a final decree against him. If the bill or cross-bill is sufficient, and the proof fails, the general rule is not to remand the cause. But there are exceptions to this rule. When the record discloses the highly probable, or almost certain, existence of the evidence needed to enable the party to prevail, the cause will be remanded. *Love* v. *Tinsley,* 32 W. Va. 25. In that case the bill purported to exhibit a copy of the judgment which could not be found in the record. Other papers, relating to the judgment and presupposing its existence, were disclosed. Hence the court could see that the omission was a mere oversight. In *Sitlingtons* v. *Brown,* 7 Leigh 271, the cause was remanded to enable the plaintiff to prove a certain fact necessary to his relief which appeared to the court to have been inadvertently omitted. In *Miller* v. *Argyle's Exrs.,* 5 Leigh 460, an injunction was sued out of the county court, to prevent the sale of land under a trust deed for purchase money, on the ground that the title to part of the land had failed and was defective as to the balance. As to the first allegation the answer was silent, and, as to the second, it set up a confession and avoidance. The county court granted the relief prayed for, notwithstanding there was no proof of the undenied allegation. The superior court of chancery reversed the decree and dismissed the bill. On an appeal from this decree, the Court of Appeals reversed the decree of the superior court in so far as it dismissed the bill, and, pronouncing the decree which the superior court ought to have rendered, remanded the cause for further proceedings, allowing the plaintiff to supply the necessary proof. To the same general effect, see *Cropper* v. *Burton's,* 5 Leigh 428; *Duff* v. *Duff,* 3 Leigh 323. In *Hilton* v. *Hilton,* 1 Grat. 161, the matter in controversy was the probate of a will. The contestants admitted, upon the record, the due

execution of the paper and the competency of the testator, but contended that it ought not to be admitted to probate because it had been subsequently revoked. The county court refused to admit it and an appeal was taken to the superior court of the county. There, one witness was introduced to prove the necessary facts, and then the contestants again admitted them, and the evidence of cancellation and revocation was introduced and the superior court affirmed the judgment of the county court, and an appeal was taken to the supreme court where the judgment of the superior court was reversed and the cause remanded. Judge Allen said the admission of the contestants prevented the introduction of the proof which the proponents would otherwise have adduced, and that, therefore, an opportunity should be afforded them to introduce it. A decree erroneously confirming a commissioner's report, based on insufficient evidence, will be reversed by the appellate court, but, if it appears that other testimony could have been adduced before the commissioner upon the question submitted, the cause will be remanded with direction to recommit the cause for the taking of further testimony. *Holt* v. *Taylor,* 43 W. Va. 153. This, no doubt, rests in part upon the fact that the plaintiff is lulled into a sense of security by the action of the commissioner and the court in relieving him, by their rulings, from the introduction of a part of the testimony, he could have put in. Other decisions of like import can be found, but these sustain the proposition that, when the record shows high probability of the existence of the necessary proof, the cause will be remanded to let it in. This does not justify like action in cases in which the record does not indicate the existence of the evidence. Some of these cases assert the further proposition that, if, by the rulings of the court, a party has been prevented from introducing testimony he could have introduced, he being thereby persuaded or assured that the proof already in is sufficient, or is in sufficient form, the cause will be remanded. This action on the part of the court lulls the party into a feeling of security. Any other rule would result most disastrously in some cases. On a doubtful question as to procedure, a different rule would require him to hazard his entire case on the test of the tenableness of his position. The safer and better rule is that a party, without losing his right to make a better case, may stand upon

the favorable rulings of the court until they fail him, and then go back and strengthen his position. Many illustrations of this are found in the decisions. On sustaining the demurrer to a bill or declaration, leave to amend is nearly always granted. Erroneous rulings on the trial of a cause, in respect to evidence and instructions and motions, are not fatal to the party in whose favor they are made, in the sense or to the extent of putting him out of court. On a reversal for such errors, the opposite party is allowed a new trial, but the party, inducing the errors, is not deprived, by way of punishment, of any right he had in the first instance. In some instances, this Court has refused to remand, in cases in which it has been asked to do so, but, in those cases, the record did not disclose the existence of the evidence, nor had the parties been misled by any erroneous rulings of the trial court.

In a brief for appellant, it is urged that, as the affidavits, setting up these facts, are made parts of the answer, and there is no special replication, denying them, they must be taken as true. We do not regard them as constituting new matter. They are set up merely in denial of the allegation of the bill. The prayer for affirmative relief is predicated upon the matter substantially set forth in full by the bill. The answer introduces nothing new, except facts, tending to negative charges made in the bill.

As, in our opinion, the evidence shown by these affidavits to be in existence is sufficient, taken alone, to prove the publication and recordation of the ordinance, the cause ought to be remanded to let it in, unless the record discloses something else fatal to the appellant. It becomes necessary, therefore, to examine and pass upon the other charges, set up in the bill against the validity of the assessments. It is argued, in the brief, that the contract was entered into before the ordinance took effect, assuming that publication was made and the evidence thereof recorded in conformity with the requirement of the charter, but this charge is not made by the bill, and the contract, exhibited therewith, bears date September 4, 1902, some days after the second publication of the ordinance, as indicated by the affidavit. As the exhibit is a part of the bill, this date, subsequent to the last publication of the ordinance, is an allegation or admission of the bill, and there is no allega-

tion in it that the contract was not actually made on that day. There is another exhibit which shows that the bid of the contractor for the paving of ·Bullit, Kanawha, Bradford and Piedmont Streets was received and accepted on the 29th day of July, 1902, some three days before the last publication of the Virginia Avenue ordinance. On this rests a contention that the Virginia Avenue contract was let before the ordinance took effect. . In it, nothing is said about bids for work on this avenue. Hence, this cannot be regarded as an allegation of the acceptance of· a bid for the paving of that avenue. The order says these bids were for certain street paving, the streets not being named, but it is immediately followed by what is called the "advertisement for bids for grading and curbing," and this does not include Virginia Avenue. Another portion of the record, exhibited with the answer, sets forth an advertisement for bids for grading and curbing, to be received on the 29th day of July, 1902, and names a number of streets, but not Virginia Avenue. There is nothing in the record which shows that any contract was made, either formally or informally, for the pavement of Virginia Avenue before the publication of the ordinance had become complete, and the date of the contract follows that of the completion of the publication.

The bill alleges the contract, as to this avenue, was let without any previous advertisement for bids. An affidavit in the record says "the contract was made after due advertisement for bids." As it thus seems probable the fact can be proven, what has been said on this subject suffices. But, if it should not be established, the long delay of the plaintiff in attacking the assessment may bar her The work done was beneficial to her property. Irregularities which might have availed her, if set up while the work was in progress, may now be worthless as ground of relief, but we leave this open, since. the question may not arise.

The contention that the contract was not let to the lowest bidder, assuming that bids were advertised for, rests upon the fact that only one bid was made under the advertisement. This was made by parties who already had a large amount of paving under contract with the city and their machinery and men on the ground. The circumstances gave them an important advantage over others not so situated, and nobody competed with them. There is obviously nothing in the suggestion that

there must be at least two bids to authorize the making of a contract. Where there is but one bid, it is, in fact, the lowest, though not by comparison. We must take the practical, not merely the grammatical, sense of the statute. We are not disposed to follow the decisions cited to the effect that the bidding must extend to the point of competition. It suffices to require opportunity for competition to be given. How can a city council compel unwilling persons to bid? When one man has proposed to do the work for a reasonable and fair price and nobody else will bid, must the hands of the council be tied, and public injury be inflicted, for the mere technical want of competition? This is not the spirit in which statutes are generally construed, There are some dicta to the effect that there must be more than one bid to justify the letting of a contract. *People v. Supervisors,* 42 Hun. (N. Y.) 456, and *Vincent v. Ellis,* 88 N. W. 836, but no actual decision to that effect has been found.

The charter does not require the assessment to be made against each lot separately. Section 28, before the amendment made by the Act of 1901 seems to have contemplated assessment by lots, though it was not explicit in that respect; but as found in the Act of 1901, it makes no reference to the subject. It says the council shall, on the completion of the paving of a street or portion thereof, "cause the several frontages abutting thereon to be measured, and shall assess upon each and every land owner so abutting, the proper amount to be determined as provided in the foregoing plan." The plan referred to says "Payment is to be made by any land owner in such proportion of two thirds of the cost as the frontage in feet of his or her land, so abutting, bears to the total frontage of all land so abutting upon such street or alley or portion thereof, so paved as aforesaid." If the statute had provided for separate lot assessments, it might be regarded as a material and important requirement, but we do not feel at liberty to read it into it. None of the terms used necessarily or fairly imply it. These lots are apparently adjacent, since they bear the consecutive numbers 1, 2 and 3, and are in the same block. In a practical sense, they may be regarded as one tract or parcel, and a fair and reasonable interpretation of the statute makes them liable to assessment as a whole.

The portion of the street, included in the improvement and estimated apportionment of cost, has four cross-street inter-

sections, each forty feet wide, and the cost of paving the cross-
ings is included in the amount charged to the owners of the
abbutting property and the city, two-thirds to the owners and
one-third to the city.   This, it is said, the charter does not con-
template and could not legally impose, since it relieves the own-
ers of property abutting on the cross streets of the cost of pav-
ing the crossings and makes the burden unequal in violation
of the constitutional provision requiring taxation to be equal.
The statute does not expressly except crossings.   Its terms seem
to contemplate apportionment of the entire cost, exclusive of
that of the curbing, which is expressly made a charge against
the city.   It says the owners of the abutting property shall pay
two-thirds "of the total cost of grading and paving said street
or alley, or portion thereof."   Inequality of burden is not made
apparent.   Judged by their width, the cross streets seem to be
unimportant ones.   Neither the plan of the city nor the length
and connections of these cross streets is disclosed.   It may be
that no lots front on them.   In that event, the inequality of
burden, in a charge of the cost of paving these cross sections
against the corner lots, based on both frontage and depth, would
be equally as great, as that of a charge against all the lots on
the main street according to frontage.   Absolute equality is
sometimes· unattainable.   In such cases, approximation is
necessary.   By far the greater number of cases fall under the
rule of approximation.   Valuation is always a matter of opinion.
An assessor's judgment is not infallible, but assessment laws
are not invalid because there is possibility, and even certainty,
of erroneous valuations, working inequality of burden.   Here
there is room for two opinions as to what is equality.   In the
judgment of the legislature, the plan embraced in the statute,
apportionment according to frontage, ignoring the comparatively
unimportant cross streets, it being reasonably certain that the
main streets will be paved first, is more equitable and just than
any other plan.   Even if we were of a different opinion, we
would be compelled to respect that of the legislature, unless we
could see a clear violation of the constitutional limitation upon
legislative power.   It is not the province of courts to review
legislative acts, or correct errors of legislative judgment, done
and made within the domain of legislative power and authority.
Legislative power to apportion and charge the cost of paving

street intersections against the property owners is not questioned, and we perceive no ground upon which such power can be successfully denied.

The ordinance, granting the street railway company, whose tracks are located in the street, its franchise, required it to pave the street between its rails and for one foot outside of the track on each side thereof. A contention against the validity of the assessment is that the amount paid by the railway company should have been deducted from the entire cost and only the residue apportioned between the city, on the one side, and the property owners on the other. The statute is silent as to this matter. Only the city ordinance deals with it. Having the power to grant the franchise to the railway company, it imposed this burden as a condition. Whatever power and discretion the council has, respecting the imposition of the cost of paving, as an incident to the granting of the franchise, is full and complete, not restrained or regulated by the statute. No higher statutory or organic law declares the advantages so obtained shall be allowed to the abutting property owners, rather than to all the tax-payers of the city. It does not seem to be governed by common law or equity principles, further than the ordinary rules of construction are applicable in seeking the legislative intent. The legislature has done no more than vest the discretionary power in the council, and the council has seen fit to distribute this pecuniary advantage to all the people of the city. We think this objection is clearly untenable.

The suggestion that no return of delinquency for improvement assessments can be certified to the State Auditor and by him inserted in his list of delinquent lands, certified to the sheriff for sale, unless the party against whom the assessment stands is delinquent as to other taxes on the property, or unless the return is made and certified with delinquencies as to other taxes, is founded on the phrase, "to be included with the state, county and district taxes in his list of delinquent land sent down to the sheriff of said county for sale," predicated on "liens for city taxes and attendant penalties as well as for improvement assessments." The argument is that this mode of enforcing payment of special assessments can be resorted to only as an incident to the sale of land for delinquency as to ordinary taxes. There is another clause in section 28 which says such assess-

ments shall "be treated and considered, and payment thereof enforced, in all respects, as herein provided for the collection of any other taxes due the city; and there shall be a lien therefor, the same as for such other taxes, which lien may be enforced the same as provided for other taxes." If any express language were necessary to indicate that the phrase "to be included with" state taxes, &c., means, when properly interpreted, to be returned, certified and sold as property is returned, certified and sold for non-payment of state and other taxes, this clause amply suffices. It was certainly never intended to enable the property owner to defeat the lien for a special assessment or prevent enforcement thereof in any manner prescribed and authorized, by simply paying his other taxes. This would be an extremely narrow limit within which to confine so important a right by mere construction, falling far short of the literal import of the terms used. However, it no doubt means also that such delinquent assessments shall be returned at the time ordinary delinquent taxes are returned, to the end that the property owner may know with reasonable certainty when to look for such proceedings and may not be called upon more than once a year to give attention to them.

Complaint is also made because the penalty of ten per cent. inflicted for non-payment of the assessment, within the time stipulated, is included in the amount certified. The statute contemplates this. Section 28 says the "assessment with the penalty aforesaid added thereto" shall be treated and considered, and payment thereof enforced, in all respects as herein provided for the collection of taxes due the city, and that "there shall be a lien therefor, the same as for such other taxes, which lien may be enforced the same as provided for other taxes." When the statute does not expressly give a lien for the penalty, or leave it in doubt as to whether it shall be considered part of the cost of the improvement, the decisions are conflicting as to whether it is collectible. 25 A. & E. Enc. Law 1197, and authorities there cited. But certainly not, if the statute in plain terms gives it.

Though the return of delinquency may be fatally defective as alleged in the bill, (1) for insufficiency of the affidavit appended to the list, and (2) for having been made at a different time from the return of delinquency as to ordinary taxes,

and though the notice of sale may be defective, there is no jurisdiction in equity to enjoin the sale for such defect; and, for that reason, we are not called upon here to decide whether such defects are material, or would be sufficient to invalidate a sale. The law does not contemplate, nor authorize, injunction to prevent a sale of property to satisfy a valid tax. In order to maintain an injunction against the collection of a tax, it must be shown that the tax is invalid and void. Public policy demands this. If the collection of valid taxes could be tied up in litigation, the state, counties, district and municipal corporations would frequently have vast amounts of their revenue impounded and tied up in the courts and in the hands of citizens to the great impairment and embarrassment of the functions of government. Other remedies, amply sufficient, are provided for the correction of mere defects in the procedure for the collection of a valid tax; and, if such collection is made by sale of property for delinquency, the law affords the former owner protection by enabling him to set aside the sale, and even the deed, under some circumstances, but he must always pay the tax as a condition precedent to relief. We think this is the clear import of many decisions of this Court. *Christy* v. *Malden,* 23 W. Va. 677; *Crim* v. *Philippi,* 38 W. Va. 122; *Bank* v. *Philippi,* 38 W. Va. 219; *Batten* v. *McClain,* 50 W. Va. 121; *Cain* v. *Elkins,* 57 W. Va. 9. It seems clear, therefore, that, if the assessment is valid, the court erred in perpetuating the injunction, as well as in holding the assessment and lien void.

If the assessment is valid, there is a further error in the failure of the court below to decree a sale of the property for the satisfaction of the lien, on the prayer for affirmative relief, contained in the answer of the city, since the statute allows enforcement thereof by suit in equity as well as by sale for delinquency. The charter provides as follows: "There shall be a lien upon all real estate within said city for the city taxes assessed thereon, including such penalties added thereto for non-payment thereof as are prescribed by this chapter, from the commencement of the year in which they are assessed. Said liens may be enforced by appropriate suit in any court of record in Kanawha county, provided such suit be instituted within five years from the time when said liens attach as herein provided. But the foregoing limitation does not apply to or affect the time within which the

liens provided for in the next succeeding section may be enforced.
* * * And any assessment so remaining unpaid in the
treasurer's hands shall be taken up by said finance committee
on settlements had with him on those days, and thereupon said
committee shall place said assessment with the penalty afore-
said added thereto in the hands of the city sergeant, to be treated
and considered, and payment thereof enforced, in all respects,
as herein provided for the collection of any other taxes due the
city; and there shall be a lien therefor, the same as for such
other taxes, which lien may be enforced the same as provided
for other taxes." Acts 1901, chapter 152, sections 27 & 28.

The amount of the assessment, without interest, is $288.03,
and, with the penalty added, $316.83. The terms of the charter,
respecting interest, though somewhat confused, seem to import
that none is to be charged until after the assessments have been
placed in the hands of the city treasurer for collection. That
occurred, in this instance, on the 7th day of July, 1906. Agree-
ably to these conclusions and findings, a decree should be pro-
nounced in favor of the city for the sum of $316.83, with interest
on $288.03, part thereof, from the 7th day of July, 1906, pro-
vided the assessment shall be found to be valid.

Therefore, the decree of the circuit court will be reversed and
the cause remanded for further proceedings.

*Reversed and Remanded.*

BRANNON, JUDGE:

Judge ROBINSON and I think that Mrs. Hager should pay
two thirds of the cost of paving half the street, deducting from
it that part of the half street paved by the car company. The
city ordinance requires the city to pay one third the cost. The
decision relieves it of that part of the paving done by the car
company. That part cost the city nothing. It profits by it,
Mrs. Hager does not. The city and Mrs. Hager should pay for
the balance after such deduction, the city one third that balance,
Mrs. Hager two thirds. By the decision the city does not pay
a third of the *cost* though the ordinance says it shall. Mrs.
Hager pays more than two thirds of the actual cost to the city.
The ordinance was intended to make the lot owner reimburse
the city two thirds of its actual expenditure. Authority for this
position exists and was before the Court. I myself do not regard

the paving by the car company as compensation for the franchise, but as imposing duty of restoration or maintenance of the street.