[Civ. No. 1127.    Second Appellate District.—April 2, 1912.]

S. M. BERNARD COMPANY, a Corporation, THOMAS HIGGINS et al., Appellants, v. THE CITY OF LOS ANGELES, a Municipal Corporation, et al., Respondents.

Widening of Street — Validity of Assessment — Posting Notices— Conflicting Evidence — Determination by Trial Court Conclusive.—In an action to annul an assessment for the widening of a street under the street opening act of 1903, in which the evidence was conflicting as to whether or not the required notices of the passage of the ordinance of intention to widen the street had been conspicuously posted upon all of the streets included within the assessment district, as required by section 3 of that act, it was for the trial court to determine the weight to be given to the evidence on

that question, and its determination against the plaintiff and in favor of the defendants must be deemed conclusive upon appeal.

ID.—RECORD OF ASSESSMENTS AND DIAGRAMS—SLIGHT UNCERTAINTY IN ONE PARCEL NOT INVOLVED—ENTIRE ASSESSMENT NOT VITIATED.—A slight uncertainty in the record of one parcel of property included within the assessment district, of which the owner does not complain, and whose assessment may have been paid, cannot vitiate the entire assessment of property in the district, nor affect the validity of the record of the assessment of the property of the plaintiff, who is in no position to complain of an alleged erroneous record of an assessment in which he is not interested.

ID.—MODE OF RECORD OF DIAGRAM — PASTING UPON STUBS IN RECORD BOOK OF ASSESSMENT—PURPOSE TO CREATE LIEN—DETACHMENT AND REPASTING IMMATERIAL.—Where the act prescribes no mode in which the diagram shall be recorded, and the purpose of the record is not to give notice of the lien created, but merely to cause it immediately to attach upon the property, the pasting of the diagram upon a stub in the record book in which the original assessment is recorded is a substantial compliance with the provision of section 20 of the act requiring the assessment and diagram to be recorded. The fact that, by handling, such diagram may be detached from the stub, and another pasting is made thereon before trial is not important, as respects the lien created.

ID.—MEANING OF WORD "RECORDED"—ABSENCE OF STATUTORY DIRECTION —NATURE OF PURPOSE AS PERMANENT OR TEMPORARY.—Though the word "recorded," in ordinary usage, signifies to copy or transcribe into some permanent book, yet such meaning of the word, in the absence of statutory direction, should attach only in those cases where the record is intended to perform functions through a long period of time. There is a manifest difference between a record intended to perform functions for a long period and one intended only to serve a temporary purpose of brief duration, which, after it is accomplished, ceases to be useful.

ID.—PURPOSE OF "RECORD" OF DIAGRAM — SUBSTANTIAL COMPLIANCE— LIBERAL CONSTRUCTION OF STATUTE.—Since there has been a substantial compliance with the purpose of the statute in requiring a record of the diagram and with the requirement whereby every right intended to be protected thereby has been secured, and since the statute expressly declares that this act shall be liberally construed to promote the objects thereof, it is held that appellants' contention to the contrary cannot be sustained.

ID.—ACQUIREMENT OF JURISDICTION TO CONDEMN LANDS FOR WIDENING STREET—REQUISITE NOTICE—ADJOURNMENT OF HEARING.—Where all of the proceedings requisite for the acquirement of jurisdiction to condemn lands for the widening of the street, upon the report of the referees, were taken with the notice which was required by sec-

tion 11 of the act of 1903, as originally enacted, and also with the further notice required by that section as amended in 1909 after the enactment of the amendment, the court, after being thus vested with full jurisdiction, had the right to adjourn the time appointed to hear the report of the referees, without further notice than that required by section 11 as it existed when jurisdiction was acquired.

ID.—POWER OF CITY COUNCIL TO ABANDON PROCEEDINGS—LOSS OF POWER UNDER AMENDED ACT.—Where no power of the city council to abandon proceedings under the original section 14 of the act of 1903, at any time prior to the payment of compensation was exercised thereunder, and under the amendment of 1909 to that section its jurisdiction to abandon the proceedings was expressly limited to a time preceding the entry of the interlocutory judgment, its attempt to abandon the proceedings after such entry is held void and of no effect, under the authority of *Title Insurance & Trust Co.* v. *Lusk,* 15 Cal. App. 358, [115 Pac. 53], for want of power to abandon the same.

ID.—IMPLIED ACTION UPON PROTEST—ORDER FOR NEW ASSESSMENT.— The ineffectual attempt of the council to abandon the proceedings was effective to the implied extent of sustaining the protests. The city council had jurisdiction to hear the protests and act upon them, and either affirm, modify or correct the assessment, or to order a new assessment, as it subsequently did in the proper exercise of its power, which it had no jurisdiction to abandon or nullify after the entry of the interlocutory decree.

ID.—MOOT QUESTION—REVIEW UPON APPEAL FROM ORDER—DISMISSAL.— This court will not review an appeal from an order which involves a mere moot question, in view of its conclusions upon the merits of the case, but the appeal from such order will be dismissed.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. F. E. Densmore, Judge Presiding.

The facts are stated in the opinion of the court.

Trippet, Chapman & Biby, and Lewis Cruickshank, for Appellants.

John W. Shenk, City Attorney, and Myron Westover, Deputy City Attorney, for Respondents.

SHAW, J.—Action to have declared null and void a certain assessment levied against the property of plaintiffs to pay the cost of widening Eighth street from Main street to Central

avenue, in Los Angeles, and to restrain the threatened sale of such property on account of delinquency in the payment of such assessment.

Judgment went for defendants, from which, and an order denying their motion for a new trial, plaintiffs appeal.

On March 8, 1907, the city council, pursuant to the provisions of the street opening act of 1903 (Stats. 1903, p. 376), duly adopted an ordinance declaring its intention to widen Eighth street between the points named by adding thereto a strip of land twenty feet in width on the southerly line thereof, from Main street to San Pedro street, and a strip of like width on the northerly line from San Pedro street to Central avenue, held in private ownership, and at the same time fixed the exterior boundaries of an assessment district, the property included within which was declared to be benefited by the contemplated improvement and which it was proposed to assess for the expense thereof. Pursuant to ordinance authorizing the same, an action was instituted to condemn the strip of land required for the proposed improvement, and on or about December 22, 1909, an interlocutory judgment was entered therein, fixing the awards of damage to those whose property was required for use in widening the street. Thereafter the cost and expense of the improvement was duly assessed upon all of the lots and lands within the assessment district, which assessment was duly filed with the city clerk on July 29, 1910, and notice of such filing given by the clerk as required by section 18 of the street opening act. Within the time allowed therefor, protests and objections against the assessment were filed by a number of persons owning property within the district. These protests were regularly set for hearing on September 13, 1910, and continued from time to time until November 15, 1910, on which date the city council adopted an ordinance directing the abandonment of the proceedings upon condition that the property owners interested in such action should pay to the city treasurer a sum of money required to reimburse the city for expenditures theretofore made in the performance of the work. The property owners complied with this condition, and on December 27, 1910, the city adopted an ordinance whereby it declared the proceedings for widening the street abandoned. Thereafter, on January 3, 1911, parties in interest applied

to this court for a peremptory writ of mandate to be directed to the city council commanding it, notwithstanding the adoption of the ordinance declaring the proceedings abandoned, to proceed in said matter as required by section 19 of the act and confirm, modify or correct the assessment filed July 29, 1910, or order a new assessment to be made. The writ was issued as prayed for, and in compliance with such mandate the city council ordered a new assessment, which was made, and on April 6, 1911, filed with the city clerk, who gave the notice required by law of the filing of the same. Protests filed, objecting to this new assessment, were denied and the assessment confirmed on May 23, 1911.

Appellants concede the proceedings in all respects regular and legal, except as to the irregularities specifically pointed out in their briefs. These specifications are as follows: First. The alleged failure to post notices of the passage of the ordinance of intention, as required by section 3 of the act. Second. Uncertainty in describing one lot or parcel of land, designated on the diagram and in the assessment as No. 160. Third. The alleged failure to record the diagram and assessment as required by section 20 of the act. Fourth. Failure to publish notice of the time fixed for hearing the report of the referees appointed in the condemnation suit pursuant to section 8 of the act, as required by section 11 thereof as amended in 1909. Fifth. It is claimed the adoption by the city council of the ordinance abandoning the proceedings terminated the same and rendered the subsequent assessment null and void. Sixth. Conceding the action of the city council in abandoning the proceedings was without warrant and in contravention of statutory provision, it is nevertheless claimed that no action was had upon protests to the first assessment, and the making of the new assessment was unwarranted and is illegal for the reason that it was not made at the next regular meeting of the city council after the expiration of the time for filing objections, nor at any time to which the hearing of such objections was adjourned, and by reason thereof the city lost jurisdiction to act in the matter.

1. As to the issue joined upon the alleged failure to post notices of the passage of the ordinance of intention in accordance with section 3, the court found in favor of defendants. Upon this question of fact the affidavit made March 18, 1907,

by one Blanchard showed that on said date he properly posted the notices along Eighth street between the points named, but there were a number of cross-streets as to the posting of which the affidavit was silent. Thereafter, on January 19, 1911, another affidavit, amendatory of the first and showing the posting on March 18, 1907, of notices upon all streets within the assessment district, as required by section 3, was made by Blanchard. In addition to the *prima facie* case made by these affidavits was the testimony of Blanchard, which clearly tended to prove that notices were properly posted, on the date named in the affidavits, upon all streets within the assessment district. There was also testimony of other witnesses to the effect that they saw notices upon some, at least, of these side streets. As against this showing was the testimony of several witnesses on behalf of plaintiffs wherein it was stated they had opportunity to observe, and did not see notices posted upon certain of the cross-streets. At most, there was a conflict of evidence upon which the determination of the trial court must be deemed conclusive. While it may be true, as contended by appellants, that Blanchard's testimony, in so far as it is inconsistent with the first affidavit, should be accorded little weight, nevertheless, conceding the omission to mention the cross-streets not in harmony with the amended affidavit and testimony of Blanchard, it was for the trial court to determine the weight to be given the evidence. The case bears no analogy to that of *Pierce* v. *City of Los Angeles,* 15 Cal. App. 702, [115 Pac. 746], cited by appellants.

2. Section 17 of the act provides that each lot or parcel of land shall be described in the assessment and designated by an appropriate number which shall correspond with a like number designating upon the diagram the lot or parcel of land so described in the assessment. Assessment No. 160 described a parcel of land as ''North 86 feet of lot 4 and lot 5 except west 80 feet.'' As recorded, this assessment was made to read: ''North 86 feet of lot 4 and 5 except the west 80 feet.'' By reason of this fact appellants insist the entire assessment is void. Clearly, the property was described as required by section 17. The error, if it be such, was due to the omission of the word ''lot'' preceding the figure ''5'' in recording the assessment and diagram as required by section

20 of the act, which provides that, "from the date of such recording all persons shall be deemed to have notice of the contents of such assessment-roll. Immediately upon such recording the several assessments contained in such assessment-roll shall become due and payable, and each of such assessments shall be a lien upon the property against which it is made." Under this provision, when recorded, each one of the several assessments contained in the assessment-roll constitutes a lien upon the particular piece of property against which it is made. The purpose of the recording is to impart notice, by an inspection of the record, to the owners of the lots assessed, as well as to others interested in transactions concerning the property. Where the record shows such uncertainty in describing a lot that an inspection thereof fails to impart notice of the existence of the lien, it is fatal to such claim. (*Labs* v. *Cooper*, 107 Cal. 656, [40 Pac. 1042]; *Blanchard* v. *Ladd*, 135 Cal. 214, [67 Pac. 131].) The alleged error in recording was confined to one piece of property, the assessment of which was No. 160. It does not appear that anyone interested therein is contesting the validity of the alleged lien; indeed, from all that appears to the contrary, the assessment has been paid. Under these circumstances, since the property of appellants assessed for their proportionate part of the cost of the improvement is not affected by the alleged erroneous record of assessment numbered 160, they are not in a position to complain. We find no authority in the act, or elsewhere, which would warrant us in holding the entire assessment void upon the ground stated. The case is unlike those wherein the entire assessment is held void on account of omitting from the diagram marks or data indicating the points of the compass, or where for other reasons it is impossible to determine the land it is sought to subject to the lien.

3. It is insisted that the evidence shows a failure to record the diagram in accordance with the provisions of section 20 of the act, as found by the court, and without which the assessment would not constitute a lien upon the property. It appears that a book was prepared and kept in the office of the board of public works wherein the original assessment as made was copied; that following a number of pages, estimated to be sufficient for copying the assessment, were inserted

and bound in this book stubs of leaves one and one-half to two inches in width, to which the original diagram was attached by pasting the same to these stubs; that through constant use and handling the diagram became loosened and partially detached from the stubs, and within a few days from the time it was so attached it was wholly separated therefrom, and for more convenient use was kept by the clerk of the board in a drawer until a few weeks before the trial, when it was again attached to the stubs in this book of record. The contention of appellants is that, since the statute does not prescribe the manner in which the diagram shall be recorded, it must be transcribed by copying in the book kept for such purpose the lines, figures and other data appearing upon the original. On the other hand, respondents insist that attaching the original diagram to the stubs in the record book, thus making it a part thereof, was a sufficient recording thereof within the meaning of the statute. The question involved is not one of constructive notice to plaintiffs, but whether or not the lien was perfected by making the record. Hence, if the pasting of the document in the book kept for that purpose constituted a recording thereof, the fact that in a few days it became separated therefrom and was detached from its holdings, is unimportant, for the statute provides that *immediately* upon such recording the lien attaches. Under the provisions of section 20, when the assessment and diagram are recorded, with the certificate of the date of the recordation, such record, not the original, constitutes the assessment-roll. The street improvement act of 1885, [Stats. 1885, p. 147], commonly known as the Vrooman act, provides that the warrant, assessment and diagram, after the recording thereof, shall be delivered to the contractor doing the work. Here, however, there was no contractor, and, so far as we are able to perceive, the original assessment and diagram, since the record thereof constitutes the assessment-roll, performed no function whatever after the recording of the same. The statute is silent as to any provision prescribing the manner in which the diagram shall be recorded. From the nature of the case, it is intended to answer a purpose speedily accomplished. Every purpose of recording is fully subserved by binding or otherwise fastening the original documents in a book kept for the purpose. In our opinion, while the practice is not to be

commended, the use of the original in the manner stated constituted a substantial compliance with the provisions of section 20 requiring the assessment and diagram to be recorded. While it may be true, as claimed by appellants, that the word "recorded," in ordinary usage, signifies to copy or transcribe into some permanent book (*Cady* v. *Purser*, 131 Cal. 552, [82 Am. St. Rep. 391, 63 Pac. 844]), such meaning of the word, in the absence of statutory direction, should attach only in those cases where the record is intended to perform functions throughout a long period of time, such as that of a deed or judgment. In such case reason exists for requiring the record to be made in durable form. In *Hager* v. *Melton,* 66 W. Va. 62, [66 S. E. 13], the court, in holding the pasting of the original ordinance for street improvement in the minute-book to be a sufficient recording thereof, said: "Whether actual transcription is necessary to effect a recordation depends, in our judgment, upon the character of the record. There is a manifest difference between a record intended to subserve purposes or perform functions throughout a long period of time, such as that of a deed, judgment, decree, or statute, and one intended only to subserve a mere temporary purpose. In the former case, there is a reason for requiring the record to be made in durable form, and, hence, there may be a presumption of legislative intent to require it. . . . Here the object is to put in force an ordinance for an improvement intended to be made and the cost thereof collected in a short period of time. After that has been accomplished, it performs no useful purpose. . . . We think the pasting of the ordinance and affidavit in the journal is a substantial and sufficient compliance with the requirements of the charter." In order to sustain appellants' contention, when it thus clearly appears there has been a substantial compliance with the requirement whereby every right intended to be protected is secured, we must ignore the express declaration of the legislature that "this act shall be liberally construed to promote the objects thereof."

4. The referees in the condemnation suit, appointed by the court to ascertain the value of the property required for use in widening the street, filed their report in the action on April 7, 1909. The court appointed May 8, 1909, as the time for hearing the same, notice of which was duly given as

required by section 11 of the act as it then existed. On said date, the court having acquired jurisdiction of all parties entitled to be heard, continued the hearing to May 24th, followed by orders duly and regularly made continuing the hearing from time to time until June 30, 1909, upon which date the hearing was commenced and proceeded to a conclusion. Under section 11 of the act, as it existed on April 7, 1909, when the report of the referees was filed, no notice of any kind was required to be given of the time fixed for the hearing of the report, other than to persons who had answered in the action. Those who had made default were not entitled to notice of any kind. This provision remained in force down to June 20, 1909, on which date section 11, as amended by act of the legislature approved April 21, 1909, [Stats. 1909, p. 1035], took effect. As amended, the section, in addition to the notice prescribed by the original section, provided for notice by publication of the time and place set for hearing the report, the publication of which notice should commence at least ten days before the time appointed for hearing the report. The amendatory act provided that all proceedings pending at the time the amendment took effect should, from the stage of any such proceedings or action then commenced and in progress at the time the act took effect, be conducted under the provisions of the act as amended. All notices of the time and place of the hearing of the report required to be given by the provisions of section 11 were duly given prior to May 8, 1909, the date fixed for the hearing, on which date the court was fully vested with jurisdiction to hear the report. The acquisition of such jurisdiction, the proceedings to obtain which were complete on May 8, 1909, marked the close of that stage thereof wherein the acts required to confer such jurisdiction were done and performed. Jurisdiction having vested, the court had the right to continue the time for hearing the report, which was the next stage in the proceedings, without further notice than that required by section 11 as it existed at the time jurisdiction was acquired.

5. It is next urged that the effect of adopting the ordinance on December 27, 1909, declaring the proceedings abandoned, was to nullify and vacate all proceedings theretofore had and taken. The ordinance of intention was adopted on March 8,

1907. Under the law as it then existed (section 14 of the act), the city was authorized to abandon the proceedings and cause a dismissal thereof at any time prior to the payment of the compensation awarded in the condemnation suit to property owners. By act of the legislature, approved April 21, 1909, said section 14 was amended so as to read as follows: "The city council may at any time prior to the entry of interlocutory judgment, abandon the proceedings by ordinance and cause such action to be dismissed without prejudice." This amendatory act took effect on June 20, 1909. It was provided therein that proceedings pending at the time when it took effect should, from such stage thereof, be conducted under the provisions of the amended act. The interlocutory decree was not entered until December 22, 1909, some six months after the amendment took effect, and during all of which time the city council might have dismissed the action, prior to the entry of such decree, and abandoned the proceedings. It did not avail itself of such right, but continued to prosecute the proceedings until long after the entry of the interlocutory decree was made, when, on December 27, 1910, and after the making and filing of the first assessment, it attempted to abandon the proceedings and dismiss the action, contrary to the provisions of section 14 as amended. The case of *Title Insurance & Trust Co.* v. *Lusk*, 15 Cal. App. 358, [115 Pac. 53], is authority for holding that the ordinance providing for the abandonment of the proceedings was void and of no effect, for the reason that the council was at the time without power to abandon the same. It is unnecessary to restate the reasons for so holding set forth in that opinion; suffice it to state that we adhere to what was there said in discussing the point involved.

6. It is claimed that no action was ever had by the city council upon the protests interposed to the first assessment, and that the city council had no power to order the new assessment. This contention is based upon the provisions of section 19 of the act, which, in substance, provides that all objections to the assessment shall be filed with the city clerk within the time prescribed in the notice required to be given by section 18, and that at the next regular meeting of the city council after the expiration of the time for filing objections, the clerk shall lay the assessment, and all objections thereto,

before the city council, and at said meeting, or at any time to which the hearing may be adjourned, it shall hear such objections and pass upon the assessment, and confirm, modify or correct the same, or it may order a new assessment. It appears from the record that after the original assessment was filed with the city clerk, he gave the notice thereof as required, and that within due time various protests were filed by property owners objecting to the assessment; that a time was duly appointed, for hearing the same, and from time to time, to which the hearing was adjourned, such objections were heard and considered, the decision thereon being likewise from time to time postponed. On November 15, 1910, the ordinance directing the abandonment, subject to the property owners reimbursing the city for expenditures theretofore made in the matter, was adopted, and such payment being made, the ordinance of December 27, 1910, declaring the proceedings abandoned, was passed. We find nothing in the record which shows that the city council in terms acted upon and by order formally made sustained the protests, as found by the court. If such order was necessary, the action of the city council in abandoning the proceedings must be deemed a sufficient compliance with that requirement. The result of the abandonment, effective to such extent, was to sustain the protests. However, there is nothing in the act which requires the city council in terms to pass upon the objections. The section provides that, after hearing the same, it "shall pass upon such assessment and may confirm, modify, or correct said assessment, or may order a new assessment." The city council had jurisdiction to hear the protests; it did accord a full hearing and did, as it was authorized to do, order a new assessment. It is insisted, however, that by reason of the failure of the city council to continue the hearing of the protests, it lost jurisdiction to order a new assessment. . It is true, we think, that where the council fails to hear or act upon protests interposed to an assessment, at its regular meeting after the expiration of the notice required by section 18, and neglects to make an order postponing such hearing, it loses jurisdiction to act upon the assessment, except upon a republication of the notice. (*Stoner* v. *City Council of Los Angeles,* 8 Cal. App. 607, [97 Pac. 692].) The property owners filing objections must be heard at such regular meeting, or at some

other time to which the hearing is *at such regular meeting* adjourned. The law provides no other means of imparting notice of a postponement of the hearing other than knowledge of the action of the city council then had and taken. While the power of the council in hearing objections is thus limited, we do not consider the section as imposing like limitations upon it as to the time when it may render its decision upon the objections. Having accorded the protestants a full hearing, it may, in the absence of an order continuing the hearing, render its decision thereon at any time, and confirm, modify, or order a new assessment. Moreover, if, as claimed by appellants, the city council had lost jurisdiction to act at all upon the original assessment, by reason whereof it was *functus officio,* and since it could not abandon the proceedings, it was clearly within its power to order a new assessment, ''upon which order like proceedings (are) had as in the case of an original assessment.'' To sustain appellants' contention would permit the city council, by neglecting to perform an act enjoined upon it by law, to thus indirectly nullify the provisions of section 14 which prohibit it from abandoning the proceedings after the entry of the interlocutory decree.

7. The record includes an appeal from an order of court denying plaintiffs' application for an injunction *pendente lite,* and dissolving a restraining order theretofore made. Under the conclusion reached upon the merits of the case, no purpose could be subserved by passing upon this alleged error. The sustaining of the judgment by this court renders the alleged error a moot question. The appeal from this order is, therefore, dismissed.

It follows that the judgment and order denying plaintiffs' motion for a new trial should be affirmed; and it is so ordered.

Allen, P. J., and James, J., concurred.