[S. F. No. 8728.   In Bank.—December 31, 1918.]

FEDERAL CONSTRUCTION COMPANY (a Corporation), Petitioner, v. J. E. CURD, Superintendent of Streets, etc., et al., Respondents.

STREET LAW—RECORDATION OF ASSESSMENT AND WARRANT—IMPROVE-MENT ACT OF 1911.—Under the Street Improvement Act of 1911 the recordation of the warrant and assessment must be made in the usual way in which other official documents are required to be recorded, that is to say, by copying them at length in a book of records to be kept for such purpose, and it is not sufficient to make use of loose

leaves in the preparation of the assessment and warrant and insert them in a lock-book from which they may subsequently be removed and delivered to the contractor for the purpose of making demand and return, and the time within which property owners may make their appeal to the city council does not begin to run, nor the lien of the contractor attach, until such documents have been properly recorded.

APPLICATION for a Writ of Mandate originally made to the Supreme Court to compel certification of list of unpaid street assessments. Denied.

The facts are stated in the opinion of the court.

Morrison, Dunne & Brobeck, Maurice E. Power, and Raymond Benjamin, for Petitioner.

Guy Knupp, Geo. G. Murry, C. L. Russell, C. L. Russell, Jr., and Thomas, Beedy & Lanagan, for Respondents.

Samuel Knight and F. Eldred Boland, *Amici Curiae.*

RICHARDS, J., *pro tem.*—This is an application for a writ of mandate by which the petitioner seeks to compel J. E. Curd, as superintendent of streets of the city of Porterville, California, to certify to W. L. Graham, as treasurer of said city, a list of unpaid assessments upon certain street improvement work alleged to have been done therein by the petitioner, and to direct the said treasurer to issue street improvement bonds thereon, representing the amount of said unpaid assessments. The facts giving rise to this proceeding are practically undisputed and may be stated as follows:

In the month of May, 1915, the city of Porterville, through its regularly constituted officials, initiated proceedings under the Street Improvement Act of 1911, [Stats. 1911, p. 730], for the improvement of certain of its streets, and in the course thereof duly entered into eleven certain contracts in writing with the petitioner herein whereby the latter agreed to perform certain street work therein described in accordance with certain plans and specifications adopted by the board of trustees of said city. The petitioner alleges, and for the purpose of considering the questions of law raised herein it may be taken to be true, that all of the work required to be

done by the petitioner under the terms of said contracts was performed and completed by it on July 8, 1915, and was then accepted by the superintendent of streets and his certificate of acceptance and approval duly issued. Thereafter and during the month of July, 1915, the said superintendent of streets prepared and made assessments as required by said act covering the cost of the work performed under each of said contracts, and also prepared in connection with such assessments a diagram of the streets on which said work had been done; and thereupon attached to each of such assess, ments a warrant authorizing the petitioner as such contractor to demand and receive from the owners of the property, subject to such assessments, the amounts shown to be due thereon. Each of said warrants was dated either on the sixth or seventh day of August, 1915. In the preparation of said assessments and warrants the said superintendent of streets made use of loose leaves specially prepared and intended for insertion in a lock-book also prepared to receive and hold the same; and as each of said assessments and warrants was completed by said superintendent of streets it was fastened in said lockbook, which was marked and entitled "Street Assessments of the City of Porterville." The diagrams of the streets included in said work were also similarly placed in said book and the said warrants, assessments, and diagrams as so placed were signed by the superintendent of streets and countersigned by the president of the board of trustees of the said city of Porterville, on either August 6 or 7, 1915. That thereupon and as to each of said assessments, warrants, and diagrams so dated, signed, and countersigned on the sixth day of August, 1915, the said superintendent of streets made on the said date the following indorsement thereon: "Recorded August 6, 1915. Irvin H. Althouse, superintendent of streets of City of Porterville, California," and as to each of said assessments, warrants, and diagrams which were so dated, signed, and countersigned on August 7, 1915, the said superintendent of streets made a like indorsement but as of the date of August 7, 1915. This was the method which had always theretofore been pursued by said superintendent of streets and his predecessors in office for the recordation of such warrants, assessments, and diagrams, and no other method was adopted or act done, such as the copying *in extenso* of such documents in any other book or record in the

recordation of the said documents in this particular case. Subsequent to the performance of the foregoing acts, and on the same day of their performance, the said superintendent of streets removed each and all of such assessments from the lock-book in which the same had been placed and delivered the same to the said contractor pursuant to the requirements of said Street Improvement Act, and between the date of the said receipt thereof and the tenth day of August, 1915, the said contractor made the demand required by said act upon each of the persons assessed for the amount of their respective assessments, and having done so the said contractors, on the tenth day of August, 1915, redelivered to the said superintendent of streets each and all of such assessments and warrants with its return as to such demand duly indorsed thereon, which said return was thereupon indorsed by said superintendent of streets as recorded on said August 10, 1915, and thereupon and on said August 10, 1915, each of said assessments and warrants were replaced by him in said lock-book, where they thereafter remained. On December 27, 1915, a number of the persons whose property had been assessed according to said assessments filed with the clerk of the board of trustees of said city, their objection, in writing, thereto, setting forth as the ground of their said objections that the said contractor had not completed its said contracts in accordance with the plans and specifications thereof. Due notice was given of these objections, and the matter of the hearing thereon was fixed for the fourth day of December, 1917. Only three members of said board of trustees were present at the hearing upon said objections. It is alleged by the petitioner herein, and is not controverted, that each of the said three members of said board so conducting and participating in said hearings and rendering their and each of their decision upon the same, was an owner or was interested in one or other of the parcels of land upon which such assessments had been imposed, and in respect to which said objections had been filed and upon which objections said hearing had been had. It was also alleged, and not controverted, that the attorney for the said protestants was at the time thereof and of the hearings thereon a law partner of the city attorney of said city who was then directly interested in the outcome of such hearings, and was thereby biased and prejudiced against the said contractor, and who advised and urged

the said board of trustees to sustain said objections. At the time of such hearings the petitioner herein objected to the said members of said board sitting upon the hearings thereon or deciding or determining the matter of said protests and objected to their determination thereof, but notwithstanding its said objection the said board of trustees, and the said members thereof, proceeded to hear and to determine said objections and to make and enter the order of said board sustaining the same. Notwithstanding said determination and order the petitioner herein has demanded of the superintendent of streets that he make and certify to the city treasurer a list of all of said assessments which are unpaid, and has also demanded of the said city treasurer that he thereupon make out and deliver to the petitioner bonds representing such unpaid assessments. Said officials having refused to comply with these demands, this proceeding has been instituted by said contractor, the petitioner herein.

The first legal question presented upon the face of the foregoing proceedings is the question as to whether or not there was a proper or sufficient recordation of the said assessments, warrants, and diagrams, above referred to, to satisfy the requirements of the Street Improvement Act. The provision of the improvement act in relation to such recordation is found in section 23 thereof, which reads, in part, as follows:

"Said warrant, and assessment, together with the certificate, if any, of the city engineer of the quantity and character of the work done, shall be recorded in the office of said superintendent of streets. When so recorded the several amounts assessed shall be a lien upon the lands, lots, or portions of lots assessed, respectively, for the period of two years from the date of said recording, unless sooner discharged; and from and after the date of said recording of any warrant, assessment and certificate, all persons shall be deemed to have notice of the contents of the record thereof."

The said Street Improvement Act, in section 37 thereof, further provides as follows: "The superintendent of streets shall keep a public office in some convenient place within the municipality, and such records as may be required by the provisions of this act. The records so kept and signed by him, shall have the same force and effect as other public records, and copies therefrom duly certified, may be used in evidence with the same effect as the originals. The said records shall,

during all office hours, be open to the inspection of any person wishing to examine them, free of charge.'' There is also contained in section 26 of said improvement act the following provision: ''The owners, whether named in the assessment or not, the contractor, or his assigns, and all other persons directly interested in any work done under this act, or in the assessment, feeling aggrieved by any act or determination of the superintendent of streets in relation thereto, or who claim that the work has not been performed according to the contract in a good and substantial manner, or having or making any objection to the correctness or legality of the assessment or other act, determination or proceedings of the superintendent of streets, shall, within thirty days after the date of the warrant appeal to the city council as provided in this section, by briefly stating their objections in writing, and filing the same with the clerk of said city council.'' The last above quoted provision of the said Street Improvement Act is the one which gives point to the petitioner's contention that the acts of the said superintendent of streets, done as above stated, in relation to the recordation of the said assessments, warrants, and diagrams, constituted and completed the recordation thereof in compliance with the provisions of said act, and hence that the said appeals and protests of the property owners affected by said assessments, not having been filed within thirty days after the dates of the recordation of said warrants, were ineffectual for any purpose, and that the said board of trustees had, therefore, no jurisdiction to entertain, hear, or determine the same; and hence said appeals and protests being too late, and the said hearing and determination by said board being illegal and void, the petitioner was entitled to have the demands which it subsequently made upon the defendants herein complied with, and upon their refusal so to do is entitled to this writ. On the other hand, if it should be concluded that the said acts of the said superintendent of streets did not constitute a proper or legal recordation of said assessments, warrants, and diagrams as required by the terms of said act, these documents have never been recorded at all, and hence the demand upon the property owners for the payment of their assessments was never legally made; and hence, also, the time within which said property owners might make and file their appeals and protests has never commenced

to run; and hence, of course, the petitioner is not entitled to this writ. It is conceded that the time within which property owners affected by assessments made and warrants issued under the terms of the said Street Improvement Act may make their appeals and protests to the board of trustees of the city begins to run from the date of the due recordation of said warrants, and that from and after the date of said recording of said warrants all persons shall be deemed to have notice of the contents of the record thereof. (Sections 23 and 26, *supra; Cotton* v. *Watson,* 134 Cal. 422, [66 Pac. 490].) It is clear that the vital and, in fact, the only question involved in this case is the question as to whether the aforesaid acts of the superintendent of streets, done in relation to the recordation of the assessments, warrants, and diagrams in question, amounted to a due recordation thereof within the proper construction of the foregoing provisions of the Street Improvement Act of 1911.

In the consideration of this question it may be noted at the outset that while the Street Improvement Act of 1911 does not contain any express direction as to how the superintendent of streets shall proceed to perform his duty in the matter of the recordation of the documents in question, it does contain certain clauses which impliedly point to the manner in which this duty shall be performed. Section 37 of the act above quoted requires the superintendent to keep, in a public office at some convenient place within the municipality, "such records as may be required by the provisions of this act," and that such records "shall, during all office hours, be open to the inspection of any person wishing to examine them, free of charge." The act also, in section 23 thereof, makes a distinction between the warrant and assessment and certificate, and the diagram, in that as to the first three of these original documents they are to be "recorded," while the "diagram" is only required to be "filed," which would go to indicate that the mere filing of the warrant, assessment, and certificate would not, of itself, be sufficient to constitute a recordation thereof. This section of the act also provides that "after said warrant, assessment, and certificate are recorded, the same shall be delivered to the contractor," for the purpose of making the demand for the payment of the assessments in accordance with the provisions of the following section of the

act. Section 25 of the act provides that the warrant so delivered to the contractor shall be returned to the superintendent of streets within thirty days after its date, with a return indorsed thereon verified by the contractor or some person in his behalf, stating the nature and character of the demand which has been made and whether any of the assessments remain in whole or in part unpaid; the section then provides that "thereupon the superintendent of streets shall record the return so made in the margin of the record of the warrant and assessment." The section further provides that the superintendent of streets "is authorized at any time to receive the amount due upon any assessment list and warrant issued by him, and give a good and sufficient discharge therefor." Finally the section provides that in case any warrant is lost, "upon proof of such loss a duplicate can be issued," etc.

These various excerpts from the sections of the Street Improvement Act immediately relating to the record of the warrant and assessment, point clearly to the conclusion that the recordation of these documents must be made in the usual way in which other official documents are required to be recorded, that is to say, by copying them at length in a book of records to be kept for such purpose. This conclusion becomes the more imperative by particular attention to the uses to which the originals of these documents are to be put after their due recordation has been accomplished. The statute, as we have seen, provides that "after said warrant, assessment and certificate are recorded the same shall be delivered to the contractor," and shall constitute his authority to make demand upon the property owners for the payment of the sums due thereon. The contractor, or his agents, may retain these originals for thirty days before making his return thereon, during all of which time they are, of course, out of the possession and control of the street superintendent, who would, therefore, during that period, have no record whatever in his office of their contents unless he had made the recorded copies of them after the usual manner of recording such original documents, as a recorder is not to retain. During such period, also, the superintendent of streets, unless he had made such record copies of this document, would have no official data upon which to compute the amount due upon any of these outstanding warrants and assessments upon which pay-

ments were sought to be made, nor from which to make a duplicate of any warrant which might have been lost. These considerations most strongly argue in favor of the contention of the respondents herein, that until the warrant, assessment, and certificate provided for in the Street Improvement Act have been duly recorded by being copied in a book of records to be kept by the street superintendent for such purpose, the time within which property owners may make their appeal to the city council does not begin to run, nor does the lien of the contractor attach. This contention also gains considerable support from the early case of *Himmelman* v. *Danos*, 35 Cal. 441, wherein it was held that the act of a street superintendent in copying an assessment, warrant, and diagram in a book kept in his office for that purpose, but without affixing thereto his signature and certificate of recordation, did not suffice to create a lien upon the property affected thereby.

In answer to this contention the petitioner places his reliance first, upon section 1170 of the Civil Code, which reads as follows: "An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, it is deposited in the recorder's office, with the proper officer, for record." This section of the Civil Code has direct reference only to the recordation of transfers of property and like instruments by official recorders, and can only inferentially have a bearing upon the present controversy; but, even so, it is to be read in connection with the provisions of section 1213 of the Civil Code in order to determine its effect as affording constructive notice of the contents of the instrument. This court, in the case of *Cady* v. *Purser*, 131 Cal. 552, [82 Am. St. Rep. 391, 63 Pac. 844], had occasion to construe both of these sections of the Civil Code together, and it was there held that in order that constructive notice of instruments required to be recorded might be given to subsequent purchasers or mortgagees, the legislature must have intended something in addition to depositing the instrument in the recorder's office for record, and that the provisions of these sections of the Civil Code are not satisfied until the instrument has been recorded by being transcribed in a proper book. When so transcribed and certified, it operates to give constructive notice of its contents, by relation to the date of its filing for record, and thus these two sections of the Civil

Code are to be harmonized. It will be seen, however, that this conclusion affords no consolation to the petitioner in the instant case. The petitioner further contends that the case of *Bentley* v. *Hurlburt,* 153 Cal. 796, [96 Pac. 890], is authority for its insistence that its lien attached, and the time for property owners to file their appeal before the city council began to run from the filing for record of the warrants and assessments in question, even though the. same were not recorded by him by copying in a book, and even though the originals were removed from his office for the purpose of making the statutory demand. In that case, however, the question involved was the sufficiency of the filing for record of a plat or map of a subdivision. The statute did not require that, in the case of such maps or plats, they should be copied in a book, but merely required that the original map or plat be filed with the recorder and be by him posted in a book of maps. The court, in that case, held that the act of filing was sufficient as applied to that class of documents to constitute a due recordation thereof, and hence that its subsequent withdrawal for some temporary purpose did not destroy the consummated effect of its recordation by that means. The distinction between that case and the case at bar is obvious. The case of *Bernard Co.* v. *Los Angeles,* 18 Cal. App. 626, [124 Pac. 88], is also cited and relied upon by the petitioner, but that case also referred to the recordation of a diagram, and is thus distinguishable from the case at bar. The conclusion which we have therefore arrived at is that the acts of the superintendent of streets in the instant case, in relation to the recording of the warrants and assessments in question, did not amount to a due recordation thereof so as to set in motion the time within which the respondents herein, as property owners affected by such assessments, might make their appeal to the city council. This being so, they were not too late in making such appeal, and hence the city council had jurisdiction to hear and determine the same.

It is not necessary to consider, in this decision, the question discussed at length in the briefs of counsel herein as to the propriety or validity of the action of the members of the city council in undertaking to hear and determine said appeals, since that subject is fully discussed and determined adversely to the petitioner's contention in the case of *Federal Construc-*

*tion Co.* v. *Curd, ante,* p. 479, [177 Pac. 469], and to which reference is made for our conclusions thereon.

The writ is denied.

Sloss, J., Wilbur, J., Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.

Shaw, J., Sloss, J., Melvin, J., Lawlor, J., Wilbur, J., and Angellotti, C. J., concurred.