[Civ. No. 19320.   First Dist., Div. Two.   Nov. 30, 1960.]

RICHARDSON BAY FOUNDATION (a Nonprofit Corporation), Appellant, v. RICHARDSON BAY SANITARY DISTRICT et al., Respondents.

Athearn, Chandler & Hoffman and Leigh Athearn for Appellant.

Kirkbride, Wilson, Harzfeld & Wallace and Peggy L. McElligott for Respondents.

McGOLDRICK, J. pro tem.*—The Richardson Bay Foundation, a nonprofit corporation, instituted an action for declaratory relief and injunction against the Richardson Bay Sanitary District and its individual members in which plaintiff prayed for judgment declaring certain improvement bonds issued by defendants to be void and that defendants be enjoined from collecting or attempting to collect from plaintiff any unpaid assessments in connection therewith. The cause was submitted on a joint pretrial statement plus written memoranda. Judgment was for defendants, from which plaintiff now appeals.

Defendant Richardson Bay Sanitary District is organized and exists as a sanitary district under part 1 of division VI of the Health and Safety Code. On May 28, 1956, defendant district adopted its Resolution Number 195, which was a resolution of intention to construct improvements in the Trestle Glen and Vicinity Special Assessment District Number 3, and to issue serial bonds representing any unpaid assessments made to cover the costs of these improvements. The resolution provided that these bonds were to bear interest at a rate not to exceed 6 per cent per annum, that they were to be issued in the manner provided for by the Improvement Act of 1911 (Sts. & Hy. Code, §§ 5000-6794),† and that the last installment of the bonds should mature 14 years from the second day of January next succeeding the 15th day of October following their date. The resolution also stated that except as therein otherwise provided for the issuance of bonds, all of said improvements should be made pursuant to the provisions of the Municipal Improvement Act of 1913, as amended (§§ 7000-7476).

On September 25, 1957, defendant district adopted Resolution Number 268, which was a resolution of intention to make changes in the assessment filed pursuant to Resolution Number 195. Among these changes was a provision for issuance of the bonds under the Improvement Bond Act of 1915 (§§ 8500-8851) instead of under the 1911 statute. Resolution Number 268 also provided for a hearing thereon to be held

---

*Assigned by Chairman of Judicial Council.

†All section numbers hereinafter referred to are those of the Streets and Highways Code.

October 21, 1957. At said hearing, defendant district overruled all protests and adopted Resolution Number 270, thereby ordering the changes embodied in Resolution Number 268.

On the same day, defendant district also adopted resolutions calling for notices inviting sealed proposals for the construction of the improvements, and bids for the sale of the bonds (Resolutions Nos. 271-272). It subsequently gave notice of a public sale of said bonds to be held on January 27, 1958. The notice stated that the exact amount of the bond issue would not be determined until after the expiration of 30 days from the date of recording the assessment, during which period the property owners might pay their assessments in cash. It provided that the bonds would be dated March 2, 1958, that they would bear interest from their date at a rate not to exceed 6 per cent per annum, and that they would be represented by semiannual coupons payable on the second day of January and July of each year, except that the first coupon would be for interest from March 2, 1958, to January 2, 1959. The notice also stated that the bonds were to be issued upon the unpaid assessments pursuant to the Improvement Bond Act of 1915, and that the assessments were to be collected in equal installments, together with interest on the reducing balances.

On January 27, 1958, the district adopted Resolution Number 280 whereby, after rejecting all other written bids, it ordered that the bonds be sold to Grande and Company, Inc., as "the highest responsible bidder therefor." On January 30, 1958, the district gave notice to pay assessments, setting March 1, 1958, as the deadline for such payment. This notice stated that in the event of failure to pay within this period, serial bonds representing the unpaid assessments and bearing interest at a rate not to exceed 6 per cent per annum would be issued pursuant to the Improvement Bond Act of 1915, and that the last installment thereof should mature 14 years from the second day of July next succeeding 10 months from their date.

On March 10, 1958, defendant district adopted its Resolution Number 290, which was a resolution of intention to make additional changes in the assessment filed pursuant to Resolution Number 195. These included a provision that the assessment bonds have denominations and maturity dates as follows: "Thirteen (13) bonds in the denomination of $1,000.00 each in the years 1959 through 1971, inclusive and fourteen (14)

bonds in the denomination of $1,000.00 each in each of the years 1972 and 1973. After said bonds are issued, the unpaid assessments will be payable in annual series corresponding in number to the number of series of bonds issued. 6.6% of each unpaid assessment with interest, shall be paid in the years 1959 through 1971, inclusive and 7.1% of each unpaid assessment, with interest, shall be paid in each of the years 1972 and 1973.''

Plaintiff is the owner of a 4.20-acre parcel of land which lies within the aforementioned assessment district. Plaintiff did not pay its assessment of $5,153.79, made pursuant to Resolution Number 195, within the prescribed period. At a hearing on Resolution Number 290, held by the district on April 21, 1958, plaintiff appeared and filed protest thereto, alleging that the changes therein proposed were not such as are permitted by law. Plaintiff contended that to so modify the denominations and maturity dates of the bonds, and to so modify the schedule of payments of unpaid assessments and the interest thereon, would require a rescinding of the original resolution of intention and a starting anew by adoption of another such resolution. Defendant district overruled plaintiff's objections, however, and adopted Resolution Number 292, thereby ordering the changes set forth in Resolution Number 290. In the meantime, however, the district had delivered the bonds to their purchaser on March 21, 1958, with the applicable modifications from Resolution Number 290 already embodied therein.

Plaintiff contends, as it did in the court below, that defendants changed the maturity dates and schedules of payments on the bonds after their sale, and also after the expiration of the period during which plaintiff could have exercised its option to pay its improvement assessment in cash. This in effect, it contends, not only denied such option, but also caused said sale to be private rather than public, thereby creating a concomitant risk of accepting less than the best price obtainable for the bonds.

It is fundamental that plaintiff is protected from a taking of its property without due process of law by both federal and state Constitutions. The Municipal Improvement Act of 1913 and the Improvement Bond Act of 1915, under the terms of which the district acted in the case at bar, provide for this protection in several ways. Among these is the requirement that before ordering that any improvement be made, the

legislative body shall adopt a resolution declaring its intention to do so, describing the proposed improvement, and specifying the exterior boundaries of the assessment district (§ 10200). Section 10301 requires that the legislative body appoint a time and place for hearing protests to the proposed improvement. There are also several provisions safeguarding the right to adequate notice, including sections which require the mailing of a notice to all persons owning real property proposed to be assessed which contains statements of the total estimated cost of the proposed improvement and of the amount to be assessed against the particular parcel covered by the notice (§§ 10306-10307). There is no contention that defendant district failed to comply with all of these requirements.

Other sections provide for the finality of the legislative body's resolution to proceed with the improvement following such hearing, and for a subsequent action to contest the validity of the assessment (§§ 10312, 10400). Plaintiff, however, attacks neither the proposed improvement, the extent of the assessment district, nor the proposed assessment itself.

Sections 8571 and 10602, Streets and Highways Code, provide that if the legislative body determines that serial bonds shall be issued to represent the expense of any proposed work or improvement, it shall, in the resolution of intention, declare that such bonds shall be issued, and specify the maximum rate of interest which the bonds shall bear. Section 8650 provides for a maximum interest rate of 6 per cent per annum. Defendant district also complied with these requirements.

It is true that there are code sections providing for a 30-day period following recordation of the assessment and before the issuance of bonds during which plaintiff would be entitled to make cash payment of its assessment (§§ 10401-10403, 10603, 10607, 8620). Such period was allowed. Section 8650.1 states that if the work is done under the Municipal Improvement Act of 1913, as in the instant case, the legislative body may, by resolution, establish the denomination of the bonds and the amount to mature each year. Furthermore, it specifies that this amount need *not* be an even annual proportion of the aggregate principal sum thereof. Section 8651 provides that the final maturity date of the bonds shall not exceed 24 years from the second day of July next succeeding 10 months from their date. However, there is *no* code provision whereby defendant district was required to announce, prior to the issuance of the bonds, either when, within that 24-year period, their final ma-

turity date would occur, or what proportion of their aggregate principal sum would mature each year.

Nevertheless, as to the former, the district provided in its original resolution of intention (Resolution No. 195) that the last installment of the bonds would mature 14 years from the second day of January next succeeding the 15th day of October following their date. This is exactly 14 years from the earliest day on which the first principal coupon could be paid under the terms of the Improvement Act of 1911 (§ 6461). Then the district adopted Resolutions Numbers 268 and 270, whereby the bonds were to be issued under the Improvement Bond Act of 1915 instead of under the 1911 statute. It subsequently gave notice of a public sale of the bonds, wherein it specified that they would be dated March 2, 1958. Thereafter, on January 30, 1958, the district gave notice of recording assessments, and provided in that notice that the last installment of any bonds which might be issued as a result of nonpayment would mature 14 years from the second day of July next succeeding 10 months from their date. This, again, is exactly 14 years from the earliest maturity date permitted for the first series of bonds by the applicable statute, the Improvement Bond Act of 1915 (§ 8650). A simple computation establishes this as being July 2, 1973, which is the same date provided for by the district's subsequent resolutions, the now challenged Numbers 290 and 292. Plaintiff was therefore on notice, during the entire 30-day period in which it was entitled to make cash payment, of its assessment and of the ultimate maturity date of which it now complains.

The main question to be determined on this appeal is whether the irregularities complained of were jurisdictional or nonjurisdictional or to put it in another manner, whether the due process clauses of both state and federal Constitutions have thereby been violated.

Appellant recognizes that a failure of a public body to comply strictly with procedural requirements is not fatal to a bond issue, but urges that the defects here are "jurisdictional" and therefore may not be remedied by curative acts.

Here the change in the installment schedule about which appellant complains will in actuality affect appellant in about the sum of $20. Certainly it is evident that "due process" cannot be measured by dollars and cents. In the case of *Chase* v. *Trout*, 146 Cal. 350, 357-358 [80 P. 81], Justice Shaw defines a jurisdictional defect as follows: "By a long line of decisions

it has become the settled doctrine that, with respect to any material defect or irregularity which could be cured by the council, the remedy by appeal is the only remedy; so that if the party does not appeal he waives the objection, and if he does appeal the judgment of the council is conclusive. As to this entire class of defects and irregularities, therefore, the curative clause could not have been intended to have any effect, for, as above shown, they must all have been disposed of, either by a failure to appeal, or by action of the council upon such appeal, before the issuance of the bonds—the event which brings into action the curative clause. As to all other irregularities up to the issuing of the warrant—those which are material, and which cannot be remedied by the council—another series of decisions has established the principle that they are fatal, and render the entire proceeding void. In treating of this class of irregularities the requirements of the law found to have been disregarded have been frequently referred to as 'jurisdictional' in character, and this without regard to whether they were or were not a part of the proceeding constituting, or necessary to constitute, a compliance with the mandates of the state or federal constitution, the intention evidently being merely to express the idea that the statute made the requirement a material and essential part of the statutory plan of procedure. Respondent now claims that this class of irregularities is not affected by the curative clause. These two classes comprise all the material irregularities that can possibly occur, except the few that might occur after the recording of the assessment and before the making of the certified list of assessments unpaid—that is, irregularities or omissions in the demand and collection of the amount due upon the land assessed. Immaterial omissions or defects would not invalidate the proceeding nor call for any curative provision. With the trifling exception above mentioned, there would be no class of irregularities upon which the conclusive-evidence clause could have the slightest effect. It is not to be supposed that the provision was intended to be so futile. It is clear that the clause was intended to have a much wider scope and to cover any irregularity in the entire proceeding.''

Moreover, the court further observed, quoting from *Ensign* v. *Barse*, 107 N.Y. 338 [14 N.E. 400, 15 N.E. 401] : ''If the thing wanting or omitted which constitutes the defect is something the necessity for which the legislature might have dispensed with by prior statutes, or if something has been done,

or done in a particular way, which the legislature might have made immaterial, the omission or irregular act may be cured by a subsequent statute.'' Furthermore, in *Chase* v. *Trout* the court defined the essentials of nonobservance which cannot be cured, viz: ''The property must be within the jurisdiction of the local board; there must be the actual performance of some work which is to be paid for, that is, a 'subject-matter' of which the council [or legislative body] can acquire jurisdiction; an assessment or apportionment of the amount to be raised must be made and . . . there must be sufficient notice and opportunity for the hearing and determination of grievances and objections to constitute due proces of law.''

The lack of any one of these elements defined is not claimed by appellant. Here the plaintiff was on notice at all times following the adoption of Resolution Number 270 on October 21, 1957, that this is a matter within the discretion of the legislative body (§ 8650.1). The sample bond declaration contained in section 8573 which the Legislature suggests ''may'' be included in the resolution of intention, assessment and notice of recording the assessment, contains a clause to provide for a final maturity date which is identical in form to that used by defendant in its notice of recording aforementioned. There is no provision therein regarding a schedule of payments.

In *Stege* v. *City of Richmond* (1924), 194 Cal. 305 [228 P. 461], the appellants filed an objection to the time of maturity of serial bonds which were to be issued to represent assessment for certain street work. The court noted that under the Improvement Act of 1911 the protests which the property owner may file are against the proposed work or against the extent of the district, or both (§ 5220). It then said, ''The issuance of such bonds is discretionary with the council under the [Improvement Bond Act of 1915] . . . and no opportunity for objection or protest to the issuance thereof is provided for by the terms of the act.'' (*Id.*, at p. 314.) It should be observed that with the exception of the fact that an interested person may also object to the proposed assessment itself under the Municipal Improvement Act of 1913 (§§ 10310, 10313), the same may be said for that statute. According to the terms of section 10601, the legislative body itself, or any contractor to whom a contract has been awarded, may bring action to determine the validity of assessment bonds, but this provision does not aid plaintiff.

The district here, whether it was required to do so or not, announced a schedule of payments prior to the issuance of the bonds. In its notice of sale it stated the assessments were to be collected in equal installments. There was no notice whatsoever of change in this until after the conclusion of appellant's 30-day option period.

We therefore conclude following this discussion that notwithstanding the existence of irregularities in the proceedings occurring subsequent to the time jurisdiction attached, said irregularities were of the kind that the court in *Chase* v. *Trout, supra,* defined as being the nonjurisdictional type subject to be remedied by curative statutes.

Our research has failed to furnish us with a case where the factual basis is similar to the one at bar. The reason for this is obvious. Members of the bar specializing in proceedings leading up to the issue of public securities as a rule are extremely careful to avoid steps that are inimical to the validity of the issue. Here the modification of the denomination of the bonds and the maturity dates, although not fatal, should be avoided to prevent expensive and needless litigation.

Notwithstanding our view that these irregularities occurred following the time that jurisdiction attached and as such did not violate the due process clause, we emphatically state that this type of loose procedure should be discouraged.

The judgment is affirmed.

Draper, Acting P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied December 30, 1960.