Opinion
 

 SIMS, Acting P. J.
 

 —Defendants Wake and several other property owners have appealed from a judgment of foreclosure and sale of property subject to a street improvement bond issued in 1957 under the provisions of the Improvement Act of 1911 (Sts. & Hy. Code, div. 7, § 5000 et seq.). The judgment was entered following the granting of plaintiff bondholder’s motion for summary judgment. The property owners contend that the failure to record the warrant, assessment and diagram as required by section 5372 of the Streets and Highways Code,
 
 [1]
 
 rendered the assessment and the bond issued thereon unenforceable; and that the defects in the proceedings were not cured by any validation acts, or by the passage of any prescribed period of limitations. They also
 
 *433
 
 assert that there is a triable issue of fact, if the assessment and bond are valid, as to whether their property is the property referred to in the assessment and bond. The bondholder asserts that there was compliance with the provisions of section 5372, and that any attack on the proceedings pursuant to which the bond was issued is barred by curative acts and by statutes of limitations. He contends there is no triable issue of fact as to the description of the property covered by the bond.
 

 We find that the record demonstrates compliance with the provisions of the statute so as to create a valid assessment and lien. Although confusedly intertwined with their argument against the applicability of curative and limitation provisions, the property owners do claim a denial of due process of law because of inadequate notice of the lien. That claim is found to be without merit. The foregoing conclusions render it unnecessary to treat the bondholder’s contention that in any event he is entitled to be relieved on equitable grounds by a reassessment for the value of the improvements which benefited the property owners’ property. We further conclude, in the absence of any express contradiction from the property owners, that the declaration and litigation guarantees submitted on behalf of the bondholder established the current descriptions of the parcels subject to the lien of the bond in question.
 

 I
 

 In his declaration in support of the motion for summary judgment, the attorney for the plaintiff alleged that the appealing defendants and others “are shown by various documents which are recorded in the Official Records of the County of Mendocino as having various interests in the real property described in the First Amended Complaint To Foreclose 1911 Act Street Improvement Bonds as amended by the first and second amendments thereto, which real property secures payment on bond No. 44 and is subject to lien for said purposes.” He further alleged: “The interests of the Defendants are derived from private contractual transactions. More particularly, the interests, as indicated by the documents which are part of the public record, are of the following categories: [There follows a list of names, each followed by a categorization of the nature of the interest claimed.]”
 
 [2]
 

 
 *434
 
 One of the attorneys for the property owners filed a declaration in which he alleged: “The Public Works’ records (where the information is supposed to be ‘recorded’) are simply kept in a file which I had to specifically ask about. Initially, I inquired of Ed Belliston [assistant director of public works in charge of the county surveyor’s records] if anyone in their office could tell me if a certain parcel was encumbered by an improvement bond. I could find no index or other means to ascertain the same. I had to specifically name the district in order to find the file containing warrant, diagram and assessment. Yet that file gave me no information to indicate if any particular parcel was in any way delinquent or encumbered; nor did the file indicate the parcels covered by the various bonds.”
 
 [3]
 

 In response, the plaintiff’s attorney filed a declaration in which he alleged: “Sometime early in 1975 I met with Gene Richardson of the Mendocino County Surveyor’s Office. In the course of our meeting, Mr. Richardson showed me the warrant, assessment and diagram of Meadowbrook Manor Assessment District No. 1 (a sanitation district), which documents were maintained by the County Surveyor in a loose-leaf binder. Copies of the diagram were given to me by Mr. Richardson in the course of our meeting.” He also interviewed the assistant director of public works who confirmed “that the warrant, assessment and diagram were filed in a loose-leaf binder maintained for that purpose by the Office of the County Surveyor. He further stated that assessments, warrants and diagrams for
 
 all
 
 Mendocino County assessment districts were also maintained in such loose-leaf binders.”
 

 Defendants contend that the mere depositing and retention of the documents at the appropriate office is insufficient to create an assessment lien which will secure the bonds thereafter issued. They insist that “record” means “to enter the information (bond amount, parcels affected, existing owners affected, etc.) in a public record which is both open to public inspection
 
 and
 
 indexed in such a way that a member of the public, contemplating the purchase or encumbrance of a particular parcel, can review the public record with an owner’s name or parcel number in mind and thereby discover any outstanding bonds which represent potential liens.” In support of this position they rely on cases which discuss the necessity of copying records into a book and of maintaining proper indexing as a requisite of giving the public adequate
 
 *435
 
 actual or constructive notice of the existence of documents which might establish a lien or other charge against particular property. (See
 
 Cullinan
 
 v.
 
 Grey
 
 (1941) 18 Cal.2d 247 [115 P.2d 460];
 
 Dougery
 
 v.
 
 Bettencourt
 
 (1931) 214 Cal. 455, 462-464 [6 P.2d 499];
 
 Federal Construction Co.
 
 v.
 
 Curd
 
 (1918) 179 Cal. 479, 485-487 [177 P. 473];
 
 Moffitt
 
 v.
 
 Jordan
 
 (1900) 127 Cal. 622, 626 [60 P. 173];
 
 Witter
 
 v.
 
 Bachman
 
 (1897) 117 Cal. 318, 322-323 [49 P. 202];
 
 Margraf v. Hart
 
 (1954) 128 Cal.App.2d 308, 317-318 [275 P.2d 771];
 
 Oroville-Wyandotte Irr. Dist.
 
 v.
 
 Ford
 
 (1941) 47 Cal.App.2d 531, 540 [118 P.2d 340] [disapproved on other grounds in
 
 Kaiser Co.
 
 v.
 
 Reid (1941)
 
 30 Cal.2d 610, 631 (184 P.2d 879)]; and
 
 Stokes
 
 v.
 
 Watkinson
 
 (1921) 53 Cal.App. 764, 768 [201 P. 134].)
 
 [4]
 

 With three exceptions, discussed below, these cases do riot directly elucidate the issue raised here. In fact the property owners concede that half the cases they rely upon do not deal with the 1911 act. In
 
 Cullinan
 
 v.
 
 Grey, supra,
 
 the court in discussing various types of assessment liens pointed out: “An assessment is a charge made for the improvement of a
 
 *436
 
 certain piece of property, and an assessment lien is the security for the payment of such charge. The assessment is ordinarily prepared by the street superintendent when the entire cost of the improvement is ascertained, but assessment liens are not created until the assessment roll is recorded in the office of said official. The time of the creation of the lien is dependent on the particular statute involved.” (18 Cal.2d at p. 254.) That merely echoes section 5372. (See to the same effect
 
 Moffitt
 
 v.
 
 Jordan, supra,
 
 127 Cal. 622 [documents must be recorded and delivered to contractor before he may demand payment for construction work];
 
 Witter
 
 v.
 
 Bachman, supra,
 
 117 Cal. 318 [evidence of warrant, diagram and assessment, without a showing they were recorded, insufficient to sustain foreclosure of contractor’s lien].) In
 
 Dougery
 
 v.
 
 Bettencourt, supra,
 
 it was clear that the statute involved (former Pol. Code, § 3480) required a tax deed to be recorded with the county recorder. What is said there about copying the instrument into the proper book and indexing it as provided by law (214 Cal. at p. 462) applies to the statutory duties of the county recorder, and does not lay down the standards for the county surveyor under the 1911 act.
 
 Oroville-Wyandotte Irr. Dist.
 
 v.
 
 Ford
 
 similarly deals with the effect of recording. (47 Cal.App.2d at p. 540.)
 

 The last two cases and
 
 Margraf
 
 v.
 
 Hart, supra,
 
 do suggest, as urged by the property owners, that the purpose of the recording was to give constructive notice. In
 
 Margraf
 
 the court reversed a judgment for a property owner who claimed to be a bona fide purchaser. The court stated: “There is no claim that the warrant, diagram, and assessment were not recorded in the office of the superintendent of streets.” (128 Cal.App.2d at p. 318.) It thereupon upheld the lien of the bond issued for the assessment. What the property owners overlook in
 
 Margraf
 
 is its reference to the bifurcated method of giving notice. This is discussed below. It does not tell us what is required to constitute recording under section 5372.
 

 The taxpayers do find support in
 
 Federal Construction Co.
 
 v.
 
 Curd, supra.
 
 There the issue was whether property owners were barred from protesting their assessments because 30 days had expired after the recordation of the warrant, diagram and assessment. (See .present § 5660.) It appeared that the documents had been placed by the superintendent of streets in a loose leaf book, and had been withdrawn by the contractor for three days to make his demand for payment. The court indicated that the mere filing of the warrant, assessment and certificate of the engineer (then required) was not sufficient to constitute
 
 *437
 
 a recordation so as to start the 30-day statutory period running. (179 Cal. at p. 485.) It referred to the .ruling in regard to recording by a county recorder found in
 
 Cady
 
 v.
 
 Purser, supra,
 
 131 Cal. 552 (see fn. 4 above), and concluded that under provisions similar to those now in question, “the recordation of these documents must be made in the usual way in which other official documents are required to be recorded, that is to say, by copying them at length in a book of records to be kept for such purpose.”
 
 (Id.,
 
 at p. 486.)
 

 Less than three years later in
 
 Stokes
 
 v.
 
 Watkinson, supra,
 
 this court upheld an assessment against attack on the grounds that there had been no proper recording under the 1911 act. The opinion stated: “[F]rom our inspection of this record we are by no means satisfied that it affirmatively appears therefrom that the recordation of the documents above referred to was subject to the infirmities existing in the record before the supreme court in the case of
 
 Federal Construction Co.
 
 v.
 
 Curd,
 
 supra; for while in both cases a so-called ‘loose-leaf book’ was used by the superintendent of streets for purposes of recordation, the infirmity disclosed in the Curd case was not in the form or physical features of said book, but consisted rather in the fact that the originals of the documents required to be recorded by the terms of the act had been placed in the book and then at once withdrawn and handed to the contractor for the purpose of making his demand, and that during the period of their absence for that purpose there was no record whatever of these documents in the office of the superintendent of streets. It does not appear that such was the method or practice pursued by the superintendent of streets in the instant case, but, on the contrary, it does appear that the papers inserted and kept in the loose-leaf book of the superintendent of streets in this case were copies of the originals handed to the contractor for the purposes of his demands, and that such copies at all times after their insertion in said book were kept there subject to public inspection. We are of the opinion that the requirements of the statute would be satisfied and fully subserved by such a procedure.” (53 Cal.App. at pp. 768-769.)
 

 As an alternative ground of decision the court pointed out that the property owner against whom enforcement was sought had denied an allegation that the necessary documents had been properly recorded for lack of information and belief, and that such a denial was insufficient. (53 Cal.App. at pp. 767-768.) In denying a hearing, however, the Supreme Court placed its imprimatur on the former ground, because it expressly disapproved the latter.
 
 (Id.
 
 at p. 771.)
 

 
 *438
 
 We can but conclude that .the procedure approved in
 
 Stokes
 
 and apparently followed in this case is the law of this state.
 
 [5]
 
 The deposit and maintenance in the county surveyor’s office, subject to public inspection, of copies of the assessment, warrant and diagram satisfied the requirements of section 5372. The case is therefore governed by
 
 Margraf
 
 v.
 
 Hart, supra,
 
 where the court stated: “The act required that the record of the street assessments be kept in the office of the superintendent of streets, and that a record of the bonds issued to represent such assessments be kept in the office of the city treasurer. (Stats. 1911, ch. 397, §§ 23, 37, 60, 66, pp. 744, 750, 758, 760; now Sts. & Hy. Code, §§ 5372, 5680, 6425, 6445.) Section 37 (now Sts. & Hy. Code, § 5680) provided that the records kept by the superintendent of streets ‘shall have the same force and effect as other public records, and . . . shall, during all office hours, be open to inspection of any person wishing to examine them, free of charge.’ Once the assessment has been recorded in a proper book, it operates to give constructive notice of its contents. [Citation.] Where bonds have been issued, the holder of a bond becomes a lienholder of record. [Citation.]” (128 Cal.App.2d at p. 318.)
 

 II
 

 In pleading and proof the bondholder relied upon curative provisions of the Improvement Act of 1911 (§ 6427)
 
 [6]
 
 and the generál validating act of 1957 (Stats. 1957, ch. 134, p. 724, effective Sept. 11, 1957).
 

 Both sides agree that the effectiveness-of such provisions is to be determined by rules enumerated in
 
 Chase
 
 v.
 
 Trout
 
 (1905) 146 Cal. 350 [80 P. 81], and
 
 Ramish
 
 v.
 
 Hartwell
 
 (1899) 126 Cal. 443 [58 P. 920]. In the latter case the court stated: “It may be regarded as settled that the legislature may make a tax deed conclusive evidence of a compliance with all provisions of the statute which are merely directory of the mode in which the power of taxation may be exercised, but that it cannot make it conclusive evidence of those matters which are essential to the exercise of the power; that as to those steps which are jurisdictional in their nature, and without which the power of taxation cannot be called into
 
 *439
 
 exercise—such as the listing or assessment of the property, a levy of the tax, some notice of its delinquency, and that the property will be sold therefor—the legislature cannot deprive the owner of the right to show want of compliance.” (126 Cal. at p. 448.)
 

 In
 
 Chase
 
 v.
 
 Trout,
 
 after referring to the above rule, the court rejected the contention “that every act required by law to be done by any person, officer, or body in the course of the proceeding is ‘jurisdictional,’ in the sense here intended, so that its omission or defective performance
 
 ousts
 
 jurisdiction and renders all subsequent acts void, and that none of these irregularities are affected by the curative clause.” (146 Cal. at pp. 356-357.) It noted: “By a long line of decisions it has become the settled doctrine thah with respect to any material defect or irregularity which could be cured by the council, the remedy by appeal is the only remedy; so that if the party does not appeal he waives the objection, and if he does appeal the judgment of the council is conclusive.”
 
 (Id.,
 
 at p. 357.) It then reexamined the principle that “all other irregularities up to the issuing of the warrant—those which are material, and which cannot be remedied by the council— . . . are fatal, and render the entire proceeding void.”
 
 (Id.,
 
 at p. 357.) It concluded, after reviewing many authorities: “The correct proposition is, that as the legislature has power to devise any scheme for the assessment and levy of taxes for local improvements, provided such scheme includes such notice and opportunity for hearing to the owner of property taxed as will be sufficient to constitute the due process of law required by the constitution, and otherwise complies with constitutional limitations and restrictions, so the legislature, by a curative clause in the law establishing the scheme, may provide that the issuance of a bond, or the execution of a deed, in the enforcement of such levy or assessment, shall be conclusive evidence of the regularity of the performance of all the required steps in the proceeding, excepting those that are necessary to constitute the due process of law, or to comply with any other constitutional prerequisite. As to all these other statutory steps or acts, the same power which prescribes them is competent to declare that their non-observance shall not be fatal to the validity of the tax and that no inquiry may be made concerning them. This is substantially the effect of the statute in question here. The conclusive-evidence clause of section 4
 
 oft
 
 he Bond Act is a part of the law under which the proceeding was carried on, and its effect is the same as if it declared that, although all of these intermediate steps are directed, yet, if they are not performed as required, and the owner permits the matter to proceed until the bond is issued, he shall be thenceforth precluded from proof of such non-observance, and the requirements shall be conclusively presumed to
 
 *440
 
 have been complied with, excepting those which are necessary to comply with constitutional mandates.”
 
 (Id.,
 
 at pp. 359-360; see also,
 
 Watkinson
 
 v.
 
 Vaughn
 
 (1920) 182 Cal. 55, 58-59 [186 P. 753];
 
 Dowling
 
 v.
 
 Conniff
 
 (1894) 103 Cal. 75, 78 [36 P. 1034];
 
 Philbrick
 
 v.
 
 Huff
 
 (1976) 60 Cal.App.3d 633, 644-650 [131 Cal.Rptr. 733];
 
 Richardson Bay Foundation
 
 v.
 
 Richardson Bay Sanitary Dist.
 
 (1960) 187 Cal.App.2d 5, 10-11 [9 Cal.Rptr. 343];
 
 Gordon
 
 v.
 
 Ransome-Crummey Co.
 
 (1918) 37 Cal.App. 755, 757-761 [174 P. 906]; cf.,
 
 Miller & Lux
 
 v.
 
 Board of Supervisors
 
 (1922) 189 Cal. 254, 273-277 [208 P. 304]; and
 
 City of Plymouth
 
 v.
 
 Superior Court
 
 (1970) 8 Cal.App.3d 454, 465 [96 Cal.Rptr. 636].)
 

 In the later case the court pointed out that “the minor details as to the mode and manner of making the assessment” was a matter within the legislative discretion, and it held that curative provisions such as existed in section 6427 (fn. 6 above), precluded an attack on the basis that the street superintendent recorded but did not properly certify to such record.
 
 (Chase
 
 v.
 
 Trout, supra,
 
 146 Cal. at pp. 362 and 369-370; cf.,
 
 Witter
 
 v.
 
 Bachman, supra,
 
 117 Cal. 318, 323-324.) We may assume that there must be some record of the assessments, but there is no constitutional requirement that would preclude the Legislature from providing that the warrant, diagram and assessment be kept in a loose-leaf file in the designated official’s office.
 

 Therefore, even if we have erred in approving the manner in which the documents were received and maintained in this case, section 6427 and the validating act would render the assessment and bond immune from collateral attack for any such defect prior to the issuance of the bond. When analyzed, the property owners’ complaint.must rest on a violation of some constitutional right of one subsequently acquiring an interest in the property to receive notice in a particular way not mandated by the improvement act as it existed at the time the bond was issued. (See part IV.)
 

 III
 

 Similar considerations apply with respect to the statute of limitations concerning any attack on the validity of the assessment and the bond, as distinguished from the right to enforce the latter against the present property owners. The defendants claim that the bondholder cannot assert the limitation provisions contained in section 5660,
 
 [7]
 
 and in
 
 *441
 
 section 7 of the Second Validating Act of 1957,
 
 supra.
 
 A defendant or one against whom a counterclaim is asserted may of course waive the statute of limitations by a failure to assert it.
 
 (Philbrick
 
 v.
 
 Huff, supra,
 
 60 Cal.App.3d 633, 642-644;
 
 Bliss
 
 v.
 
 Sneath
 
 (1898) 119 Cal. 526, 528-529 [51 P. 848]; but cf.,
 
 Union Sugar Co.
 
 v.
 
 Hollister Estate Co.
 
 (1935) 3 Cal.2d 740, 744-745 [47 P.2d 273].) In the case last cited the court adopted the following rule in the opinion of the District Court of Appeal: “Where the answer to a complaint sets up new matter constituting an affirmative cause of action or counterclaim, such new matter is deemed controverted under the provisions of section 462 of the Code of Civil Procedure, and the adverse party may, without formal plea, show that the attempted defense is barred by the statute of limitations, that statute being deemed pleaded by operation of law. [Citations.] However, it has been held that unless the adverse party invokes the plea of the statute at the trial, and brings to the attention of the trial court his purpose to offer evidence in support of such plea, the court cannot assume that he desires to make any such defense, and he cannot invoke the plea for the first time on appeal. [Citations.] Herein appellant invoked the plea at the trial and the trial court made a finding on the plea thus presented. We must therefore hold that the statute was sufficiently pleaded and that it was. properly entertained by the trial court.” (3 Cal.2d at p. 745; see also 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 237, p. 1094; and 3
 
 id.,
 
 Pleading, § 4, p. 1693.)
 

 Here in granting the motion for summáry judgment the court found the statutes applied. They clearly do, insofar as the original validity of the assessment and the bond issued therein are concerned. (See
 
 City of Baldwin Park
 
 v.
 
 Stoskus
 
 (1972) 8 Cal.3d 563, 570 [105 Cal.Rptr. 325, 503 P.2d 1333].)
 

 IV
 

 The gravamen of the property owners’ complaint is that they had difficulty in tracing down the existence of a lien on their property. They claim that notice is an essential element of due process. There is, however, no assertion that .the owner of parcel 51 on the assessment
 
 *442
 
 diagram, there described as parcel 47A as shown at page 21, Assessors Book No. 38, Mendocino County Records, failed to receive notice of the assessment proceedings leading up to the assessment and the subsequent issuance of bond No. 44. They fault the state and county surveyor for a failure to provide a recording system which would permit them as owners of parcels bearing a current assessment number to readily ascertain that there was an earlier tax lien against their property. This argument was made and rejected in
 
 Seattle
 
 v.
 
 Kelleher,
 
 (1904) 195 U.S. 351 [49 L.Ed. 232, 25 S.Ct. 44], as follows: “We have said enough in our opinion to show that the enforcement of the assessment lien could not be prevented by the original owner. It is urged, however, that a different rule could be applied in favor of one who purchased the land under the circumstances stated above. But the attempt to liken taxation, whether general or special, to the enforcement of a vendor’s lien, and thus to introduce the doctrine concerning
 
 bona fide
 
 purchasers for value, rests on a fallacy similar to that which we have mentioned above, which would deny the right to tax upon an executed consideration. A man cannot get rid of his liability to a tax by buying without notice. [Citations.] Indeed he cannot buy without notice, since the liability is one of the notorious incidents of social life. In this case the road was cut through the plaintiff’s land, and, if he had looked, was visible upon the ground. Whether it had been paid for was for him to inquire. The history of what had happened would have suggested that it was not improbable that sooner or later a payment must be made.” (195 U.S. at p. 360 [49 L.Ed. at pp. 235-236].)
 

 In any event the record here shows adequate opportunity for notice. The indexing in the county recorder’s office enables anyone to trace his title back, the diagram in the surveyor’s office furnishes some description of the property involved, and puts the inquirer on notice that an assessment was levied against a particular parcel. Between these records and the records admittedly in the treasurer’s office, it can be ascertained that a bond was issued for the assessment and is unpaid. We find no lack of notice, assuming such notice was required.
 

 V
 

 At first blush it appears that the property owners’ objections to the description of the property admittedly owned by them in the inclusion of the description of the property assessed and bonded, described as set forth above (part IV) is not sustained by sufficient evidence. In the record is an affidavit by the attorney for a nonappealing
 
 *443
 
 property owner which states: “I have searched all of the Assessor’s Books since prior to the bond until the present day and find no parcel of land designated as 47A, at page 21, Assessor’s Book No. 38, Mendocino County Records.”
 

 On the other hand it appears that the diagram of the assessments was available for inspection. It must be presumed that the location and nature of parcel 51, referred to in the bond, was ascertainable from inspection of the diagram. The litigation guarantee certificates produced by the attorney for the bondholder which contained descriptions of the properties of the respective property owners were accompanied by plots showing the relative location of those parcels. If there was a material discrepancy between the parcels as so shown and the property assessed as shown on the diagram, it could have been readily pointed out.
 

 The documents referred to were authenticated by the attorney for the bondholder as follows: “Litigation Guarantees obtained by Plaintiff from Western Title Insurance Company in Ukiah, California, reveal that said parcel 47A securing said bond No. 44 has been subdivided into several smaller parcels, all of which are owned by the answering and defaulting defendants herein. Copies of said Litigation Guarantees are attached hereto as Exhibit B and incorporated by reference herein.” Separate instruments insure the attorneys in the sum of $1,000 that the named person has a vested interest in property which is a portion of that subject to the bond in question. We are disposed to admit these litigation guarantees as prima facie evidence of the truth of their contents. They may be deemed summaries of the business records of the title insurance company. They are certainly declarations involving the pecuniaiy interest of the title company. If there is error and a foreclosure occurs the liability of the title company to those who were injured by action taken on information which it supplied for the purpose of such action might be catastrophic compared to the nominal premium received. Finally we note again that there is no specific denial that the property shown on the plots attached to the reports differs from the plot on the assessment diagram. In this sense the trial court and this court are being asked to take judicial notice that the current assessor’s plot and the diagram in the surveyor’s office are similar.
 

 Code of Civil Procedure section 437c provides in part: “If a party is otherwise entitled to a summaiy judgment pursuant to the provisions of this section, summary judgment shall not be denied on grounds of
 
 *444
 
 credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment,..
 

 We therefore reject the property owners’ contention that there is a triable issue of fact concerning the current description of the property subject to the lien of the bond.
 

 Defendants Schrage also purported to appeal from a subsequent order denying their codefendants’ motion to vacate the judgment and permit those codefendants to amend their answer to assert that collection of the penalties imposed by the 1911 act was barred by the statute of limitations and by constitutional provisions governing usury. It does not appear that the Schrages raised the point in the lower court. In any event it appears that the trial court did not abuse its discretion, and that the appellants have so conceded by failure to argue the point on appeal. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, p. 4391.)
 

 The judgment and the order denying the motion to vacate the judgment are affirmed.
 

 Elkington, J., and Weinberger, J.,
 
 *
 
 concurred.
 

 [1]
 

 At the time, 1957, the bond was issued, section 5372 provided as follows: “The warrant, diagram and assessment shall be recorded in the office of the superintendent of streets and may be recorded at any hour of the calendar day. When so recorded the several amounts assessed shall be a lien upon the lands, lots, or portion of lots assessed, respectively, and unless sooner discharged such lien shall so continue for the period of four years from the date of said recordation, or in the event bonds are issued to represent said assessment, then such lien shall continue until the expiration of four years after the due date of the last installment upon said bonds or of the last principal coupon attached thereto.” (Stats. 1951, ch. 1093, § 15, p. 2831; cf. Stats. 1963, ch. 1210, § 2, p. 2723, adding division 4.5, “Notice of Special Assessment and Foreclosure Proceedings,” to the Streets and Highways Code, and
 
 id.,
 
 § 4, p. 2727, amending § 5372 to provide for recording a notice of assessment with the county recorder as required by § 3114 of the new division. Both statutes have been subsequently amended, but the general requirements imposed in 1963 have been preserved.) Section 5011 reads in pertinent part: “‘Street superintendent’ or ‘superintendent of streets’ when used with reference to a county means the county surveyor,...” All references herein are to sections of the Streets and Highways Code unless otherwise indicated.
 

 [2]
 

 From a declaration executed by the assistant treasurer-tax collector of the county, the office charged with receiving payment on the bonds (§§ 6424, 6425), it was established that principal and interest on the bonds was delinquent as alleged and as provided in the judgment.
 

 [3]
 

 The attorney also sought a continuance to depose the assistant director of public works concerning the county surveyor’s records in order to confirm his own declaration. His request was denied and we find no error in refusing cumulative testimony.
 

 [4]
 

 The property owners also rely upon an analogy to the general statutes governing the recording of documents with the recorder. “The recorder acts as the agent of the party procuring the recordation, and the party is responsible for errors in copying or indexing, with the result that third persons have notice only of what appears on the record.
 
 (Cady
 
 v.
 
 Purser
 
 (1901) 131 C. 552, 556, 63 P. 844.) ... It has accordingly been pointed out that California has an ‘index system of recording,’ and that
 
 correct indexing is essential
 
 to proper recordation.
 
 (Rice
 
 v.
 
 Taylor
 
 (1934) 220 C. 629, 633, 32 P.2d 381; see 23 Cal.L.Rev. 107; 52 Harv.L.Rev. 170.)” (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 150, p. 1891.) As they point out, the requirements of such recording are set forth in detail in the Government Code. (See Gov. Code, §§ 27230-27265.) Provisions of the Civil Code delineated the effect of such recording. (See Civ. Code, §§ 1170 and 1213, and
 
 Cady
 
 v.
 
 Purser
 
 (1901) 131 Cal. 552, 555-559 [63 P. 844]; and
 
 Anderson
 
 v.
 
 Willson
 
 (1920) 48 Cal.App. 289, 293 [191 P. 1016].) On the other hand, at the time of the creation of the assessment and bond in question, the Improvement Act of 1911 provided: “The superintendent of streets shall keep a public office in some convenient place within the city, and shall keep such records as may be required by this division. The records so kept and signed by him shall have the same force and effect as other public records, and copies therefrom duly certified, may be used in evidence with the same effect as the originals. The records shall, during all office hours, be open to the inspection of any person wishing to examine them, free of charge.” (Former § 5680, Stats. 1941, ch. 79. § 1, p. 878; cf. as amended, Stats. 1969, ch. 371, § 46, p. 906.) “The bonds and interest thereon shall be paid at the office of the treasurer, who shall keep a fund designated by the name of the bonds, into which hé shall place all sums paid him for the principal of the bonds and the interest thereon, together with all penalties thereon, and from which he shall disburse such sums, upon the presentation of proper coupons. Under no circumstances shall the bonds or the interest thereon be paid out of any other fund.” (§ 6424.) “The treasurer shall keep a register in his office, showing the series, number, date, amount, rate of interest, payee and indorsees of each bond, and the number and amount of each coupon or principal or interest paid by him and shall cancel and file each coupon so paid.” (§ 6425; see
 
 Margraf
 
 v. Hart,
 
 supra,
 
 128 Cal.App.2d 308, 318.)
 

 [5]
 

 CoincidentaIly the opinion in the earlier case was written by Richards, Justice pro tempore, and in the latter by John E. Richards, then and at the time of the earlier opinion an Associate Justice of Division One of this court.
 

 [6]
 

 Section 6427 provided and provides: “Bonds issued pursuant to this'part shall by their issuance be conclusive evidence of the regularity of all proceedings under this division leading up to such issuance.”
 

 [7]
 

 Section 5660 provided and provides: “No action, suit, or proceeding to set aside, cancel, avoid, annul or correct any assessment or reassessment, or to review any of the
 
 *441
 
 proceedings, acts, or determinations therein, or to question the validity of, or to enjoin the collection of the assessments or reassessments, or to enjoin the issuance of bonds to represent the same, shall be maintained by any person unless such action is commenced within 30 days after the recording of the warrant, diagram and assessment or reassessment, and thereafter all persons shall be barred from any such action or any defense of invalidity of the assessment or of bonds issued thereon or of the reassessment if such is made and of bonds issued thereon.”
 

 *
 

 Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.